I,WALTZER, Judge.
STATEMENT OF THE CASE
Clifford Maher, an officer of the New Orleans Police Department (NOPD) with permanent status, appeals from a decision of the Civil Service Commission (the Commission), City of New Orleans, denying his appeal from his termination by NOPD [1] *1251 Finding no error of fact or law in the Commission’s decision, we affirm.
STATEMENT OF FACTS
The parties agreed that Maher’s termination was based on a positive drug screen for cocaine. The test was administered in connection with Maher’s having filed a report of an employment-based injury. Maher alleged that the test result was a “false positive”, caused by his dentist’s having administered Lidocaine less than forty-eight hours prior to the drug test.
Sergeant Lawrence Miller, an NOPD sergeant operating as an investigator for NOPD’s Public Integrity Division, testified that as a result of a drug test | ^administered in connection with NOPD’s substance abuse testing policy, Maher tested positive for cocaine metabolites. NOPD conducted a Bureau Chief hearing, as a result of which Maher was terminated from his position with NOPD. Sergeant Miller attempted unsuccessfully to contact Maher’s dentist, Roberto Llopis, prior to submission of the report. Maher did not offer any other mitigating factors, and was directed to address the “false positive” issue with the City’s medical review officer, Dr. Warren McKenna. Subsequently, Sergeant Miller spoke with Dr. Llopis, who challenged Dr. McKenna’s expertise but did not offer a scientific refutation of Dr. McKenna’s opinion.
Ronnie Calhoun, a medical office assistant employed by the Tulane University Hospital and Clinic testified that, among his duties in the Employee Health and Occupational Medicine department, he performs drug screens. The hospital’s methodology and chain of custody of the specimen are not at issue herein.
Stacey Nash, screening supervisor' for Kroll Laboratory, testified that he reviews data packs that come off the chemistry analyzer, reviews calibration control on patient samples and determines which samples go on for further testing. A suspect sample is any sample whose quantitation is considered positive according to manufacturer and client guidelines. Suspect samples are re-tested. He identified Maher’s sample as suspect, requiring further testing for opiates and benzoylecgonine, the main urinary metabolite of cocaine.
| .-¡Cynthia Howard, an extractor at Kroll Laboratory, testified that she matches the bar code on a specimen tube with the number on the aliquot sheet, then breaks down the sample to go on the testing machines. She extracted the drug, returned it to temp storage, put it in a vial, put it in a heat block for thirty minutes (derivatized it) and matched it with the sample of Maher’s specimen. This was the second phase of the drug test.
Patricia Pizzo, Director of Toxicology for Laboratory Specialists Inc. (LSI), was accepted by both counsel as an expert in toxicology. She identified the internal and external chain of custody documentation, copies of analytical data, instrument maintenance record, and copy of the final report provided to the City of New Orleans with her signature as certifying scientist and her curriculum vitae. She reviewed all the analytical data and signed out a positive report on Maher’s drug test. The test discovered benzoylecgonine, which Pizzo identified as the primary metabolite of cocaine.
Pizzo reviewed a letter from Dr. Llopis, in which he said that he administered the following drugs to Maher on the evening of 6 July 1999: 144 mg of 2% Lidocaine 1:100,000 Epinephrine. He also prescribed Amoxicillin 500 mg, Vicodin E.S. for pain when not on duty, and Orudis 75 mg for pain when on duty. Pizzo testified that neither Lidocaine, Epinephrine, Vico-din, Amoxicillin nor Orudis would test positive for cocaine. According to Pizzo, the samples are molecularly and structurally different and give a different gas chroma *1252 tography/mass spectrometry (GC/MS) fragmentation pattern. In her ^opinion, there is no way these drugs could show up as positive for benzoylecgonine. She testified that her opinion is supported in the pharmacological literature in CRC’s publication, “Mass Spectral Data of Drugs,” which lists very specifically the GC/MS fragmentation patterns. Both the Hewlett Packard and National Bureau of Standards mass spectral libraries clearly indicate that Lidocaine will not give the same fragmentation pattern as benzoylecgonine. To the same effect is “Pharmacology of Drugs” by Goodman and Gillman, which explains the breakdown of drugs, “The Isolation and Identification of Drugs” by E.C.G. Clark, and “Pharmacology of Drugs” by Dr. Ronald Basil. According to Pizzo, there are a number of publications that explain the metabolic pathways of the various anesthetic-type drugs such as cocaine and Lidocaine. She denied that there are “caine” products that cause false positives. She also testified that the metabolite for cocaine would clear the body within approximately twenty-four to forty-eight hours, depending chiefly on the amount of fluids consumed by the person tested.
Maher testified that he has been an NOPD employee for twenty-five years, and has not been disciplined within the last three years. According to Maher, he saw Dr. Llopis on 6 July 1999 and was injected with Lidocaine and “cut on”. He returned to work the next day and, while working, he hit his knee on a car bumper. The next day he was in increased pain, went back to the Fourth District Police Station and reported the injury to his supervisor, Lt. William Johnson. Lt. Johnson referred him to Sergeant John Gagliano, who typed a first report of injury. Maher |fitestified that he knew at that time he would have to take a drug screen before he could be treated, and had no problem with that policy. He gave a specimen, poured it into a cup and sealed it.
Maher identified a letter of 21 July 1999 from Dr. Warren McKenna of the City of New Orleans Health Department advising that Maher’s urine sample contained ben-zoylecgonine, a cocaine metabolite, as determined by immunoassay and confirmed by GC/MS. Maher paid for an independent drug test on 29 July 1999, the results of which were negative.
Sergeant Cyril Davillier, a thirty-two year veteran of the NOPD, testified that he worked with Maher for several years and asked for him to work in his narcotics unit. According to Sergeant Davillier, Maher was a good, dependable officer. Officer Wallace Dennis, a twenty-seven year NOPD veteran, testified that he was Maher’s co-worker for eight to ten years and his friend for thirty years. During that time, he knew Maher to be a dedicated officer who did all the jobs to which he was assigned.
The case was left open for Dr. Llopis’ testimony; however, Maher did not offer that testimony.
STANDARD OF REVIEW
In Smith v. New Orleans Police Department, 99-0024, pp. 5-6 (La.App. 4 Cir. 9/22/99), 743 So.2d 834, 837-838, writ denied, 99-3242 (La.1/14/00), 753 So.2d 221, this Court set forth the standard of appellate review regarding civil service disciplinary cases as follows:
In civil service disciplinary cases, an appellate court is presented with a multifaceted review function. Walters v. Department of Police of the City of New Orleans, 454 So.2d 106 (La.1984). First, as in other civil matters, deference will be given to the factual conclusions of the Commission. Hence, in deciding whether to affirm the Commission’s factual findings, a reviewing court should apply *1253 the clearly wrong or manifest error rule prescribed generally for appellate review. Walters, swpra.
Second, in evaluating the Commission’s determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the court should not modify the Commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion. La. R.S. 49:964.
Legal cause exists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La.App. 4th Cir. 1990). The Appointing Authority has the burden of proving the impairment. La. Const. Art. X, Sec. 8(A). The appointing authority must prove its case by a preponderance of the evidence. Cittadino, supra.
“Arbitrary or capricious” can be defined as the lack of a rational basis for the action taken. Shields v. City of Shreveport, 579 So.2d 961 (La.1991). A reviewing court should affirm the Civil Service Commission conclusion as to existence or cause for dismissal of a permanent status public employee when the decision is not arbitrary, capricious, or an abuse of the Commission’s discretion, as presented in this case.
Employees with the permanent status in the classified civil service may be disciplined only for cause expressed in writing. La. Const., Art. X, Sec. 8(A). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. Newman v. Department of Fire, 425 So.2d 753 (La. 1983).
In reviewing the Commission’s findings of fact, the Court’s appropriate standard of review suggests that this Court should not reverse or modify such a finding [ 7unless it is clearly wrong or manifestly erroneous. If the Commission’s order is not arbitrary, capricious or characterized by abuse of discretion, this Court should not modify the Commission’s decision. Cittadino, supra.
ASSIGNMENT OF ERROR: The Civil Service Commission acted arbitrarily, capriciously and contrary to the law and to the facts in upholding the NOPD’s termination of Officer Clifford Maher.
The Commission found that NOPD established the integrity of the testing procedures through the testimony of the persons in the chain of custody. It also referred to Pizzo’s uncontroverted testimony that Lidocaine would not create a false positive test result for cocaine. These conclusions are clearly supported by the evidence and are not manifestly erroneous or clearly wrong.
Employees like Officer Maher, with permanent status in the classified civil service, may be disciplined only for cause expressed in writing. La. Const, of 1974, Art. X, § (A). Cause for dismissal includes conduct prejudicial to the public service involved or detrimental to its efficient operation. Disciplinary action is arbitrary and capricious only where there is no real and substantial relationship between the improper conduct and the efficient operation of the public service. Id.
NOPD need not prove that Maher was a systematic cocaine user, or an addict, or even that he had the intent to use an illegal substance. It must prove only that Maher tested positive for the presence of a controlled drug. Small v. Department of Police, 98-0292, pp. 4-5 (La.App. 4 Cir. 10/21/98), 720 So.2d 751, 753.
*1254 |sWe recognize the extraordinary seriousness of NOPD’s career-ending discipline of an officer who, on the face of the record, is a veteran police officer. We also note the uncontroverted character evidence supplied in the testimonies of Officers Davillier and Dennis. However, we are also mindful of the serious nature of Maher’s having failed a drug test whose regularity and accuracy is supported by uncontroverted evidence. One reason why drug tests are uniformly authorized for public employees such as police officer is their pivotal role in serving the public and ensuring the public safety. A police officer who uses a dangerous drug such as cocaine not only commits an illegal act, but also compromises his integrity as a law officer. The adverse effects of drug use in the context of a professional who must investigate and arrest those who purvey and possess that drug are obvious. Indeed, since the officer presumably must procure his cocaine illegally, he not only commits a crime himself, but he cannot effectively perform his official duties vis-a-vis his own drug supplier and the supplier’s colleagues and competitors. Such an officer compromises the integrity of the justice system as well, and is subject not only to the impairment of judgment that is the necessary concomitant of illegal drug use, but also to extortion by his drug supplier and associates in these illegal pursuits.
Maher and the dissenting Commissioner rely on this Court’s opinion in Small. However, because of factual dissimilarities between that case and the instant case, their reliance is misplaced. Officer Small admitted that he had taken a prescription painkiller, Butapitaul, without a doctor’s prescription. There was 19uncontroverted evidence that Small had asked his daughter to give him his prescribed pain medication, Vicodin, because he was experiencing severe pain from a tooth extraction. Small’s daughter mistakenly gave him Bu-tapitaul from a container that had been left by Small’s nephew during one of his ire-quent visits to Small’s home. The drug had been prescribed to treat the nephew’s migraine headaches, and was similar in appearance to Vicodin. This court found that under these particular circumstances, Small’s ingestion of the drug provided cause for discipline. However, there was no proof that Small’s action affected his job performance, and his discipline, therefore, should be no more than a one hundred twenty-five day suspension.
In the case at bar, there is no indication of honest error on Maher’s part. His only excuse for the presence of cocaine metabolite has been disproved by uncontrovert-ed scientific evidence. We must infer that within forty-eight hours of his drug test he used cocaine. By this drug’s very nature, and also because of the danger to public safety implicit in its use by a police officer, there is a clear adverse effect on Maher’s job performance.
This Court rejected an argument similar to Maher’s in Montegue v. City of New Orleans Fire Dept. 95-2166 (La.App. 4 Cir. 5/29/96), 675 So.2d 810, writ denied 96-1707 (La.10/4/96), 679 So.2d 1389. There, a fire department employee tested positive for marijuana and cocaine. He argued that he had worked for the department for over twelve years with a clean disciplinary record, and his drug use did not affect his work performance. We held:
|, nIn our opinion, the mere presence of illegal drugs such as marijuana and cocaine in a firefighter’s body is sufficient to warrant dismissal. The argument that the appellant did not engage in drug use on the job is specious as drugs of this type remain in the body for a considerable length of time and impairs (sic) judgment. Further, since it may not readily be apparent to co-workers that an individual’s judgment is impaired *1255 because of the usage of illegal drugs, the public and the appellant’s co-workers may be unwittingly exposed to more danger. Appellant’s argument that drug use did not impair his performance on the job is equally specious. Assessment of impairment on the job, absent some gross mistake made while engaged in fire fighting, is difficult to ascertain. It would not be prudent to require the Appointing Authority to adopt a “wait and see” attitude concerning the effects of impairments caused by drugs prior to terminating a fire fighter. Nor would it be prudent to require the appointing authority to risk potential liability in the event of a catastrophe for knowingly keeping a person known to use illegal drugs on the payroll. There are strong public policy reasons for upholding the termination of fire fighters who fail random drug tests.
Montegue at pp. 6-7, 675 So.2d at 813-14.
The foregoing considerations are certainly as applicable to a police officer as they are to a fire fighter. Given the police officer’s investigatory and arrest functions, the public policy for upholding termination under the circumstances of the instant case is even stronger than the policy applicable to fire fighters. We find adequate support for the Commission’s affirmance of the NOPD’s termination of Officer Maher. The assignment of error is without merit.
CONCLUSION AND DECREE
For the foregoing reasons, the decision of the Civil Service Commission is affirmed. Costs of this appeal are assessed against the appellant.
AFFIRMED.

. Three disciplinary actions were consolidated: docket number 6057, an interim suspension; docket number 6095, a twelve-day suspension; and docket number 6097, Maher’s termination. Only the termination is at issue herein.