558 So.2d 1311 (1990)
Leander CITTADINO
v.
DEPARTMENT OF POLICE.
No. 89-CA-1242.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1990.
*1312 Frank G. Desalvo, Joseph P. Raspanti, New Orleans, for plaintiff-appellant.
Okla Jones, II, City Atty., Wm. A. Aaron, Jr., Chief Deputy, Val K. Scheurich, III, Chief of Litigation, Keith A. Doley, Asst. City Atty., George Blair, Deputy City Atty., New Orleans, for defendant-appellee.
Before BARRY, KLEES and WILLIAMS, JJ.
BARRY, Judge.
Leander Cittadino appeals a Civil Service Commission ruling which upheld his 120 day suspension from the New Orleans Police Department.
An administrative investigative report documented Cittadino's alleged violations of Rule 2, Paragraph 1, relative to Adherence to Law; Rule 4, Paragraph 4, relative to Neglect of Duty; and Rule 2, Paragraph 3, relative to Truthfulness. Sgt. Mason Spong of Internal Affairs conducted the investigation stemming from a taped conversation allegedly between Cittadino, Rocky Blimier and Jose concerning poker machines in February, 1987. He interviewed Cittadino on June 21, 1988 and the statement was transcribed and signed June 23, 1988.
According to his transcribed statement (introduced at the subsequent Commission hearing) made to Sgt. Spong and Sgt. Eddleman (Eddleman asked no questions), Cittadino admitted to the sergeants that he knew a person named Rocky who owned Compak Grocery on St. Louis and Bourbon although he was not sure his last name was Blimier. He did not know Jose. Cittadino admitted talking to Rocky about placing video machines in an upstairs barroom. Cittadino stated that he bought legal video machines seven or eight years ago. He said poker machines (of which he knew little) were legal if they did not have a knock-off button. Although he admitted having a video machine business on the side, he did not have an outside employment form (required by the department) because it was a hobby. Cittadino denied offering poker machines to Rocky but claimed he discussed only video machines.
At that point in the middle of the interview Sgt. Spong played the tape of the *1313 conversation and asked Cittadino if he recognized his voice. Cittadino answered affirmatively and stated that the other person sounded like Rocky. He did not recognize the third voice on the tape. When asked by Sgt. Spong where the tape had been made, he stated that it was probably at Popeyes on Canal Street around February, 1987.
When Sgt. Spong asked whether he offered to provide poker machines to Rocky at the end of the tape, Cittadino said he did not know how to obtain such machines and did not know why Rocky felt he could. He said he was explaining to Rocky about poker machines. He also disclaimed having a friend who could provide such machines when he was asked by Sgt. Spong to provide the friend's name. When Sgt. Spong asked whether his taped declarations to Rocky "about being able to provide poker machines" were true, Cittadino said: "It's moreorless [sic] a conversation with Rocky." When the sergeant questioned Cittadino as to why he had not terminated the conversation when it became involved in an illegal matter, he answered that he did not know.
Cittadino was charged in a departmental disciplinary letter with violating the rules and/or procedures in the following instances:
In February, 1987, you met with two subjects, known as Rocky and Jose, at Popeye's [sic] Chicken on Canal St. at Exchange Alley. During your conversation with these two men you attempted to assist them in obtaining Poker Video Machines to be used for illegal purposes.
You were untruthful in the statement you gave to Sgt. Spong on June 21, 1988. In that statement you denied having had a meeting or the conversation in question, until you were allowed to review a tape recording of that conversation. You then admitted that it was your voice on the recording.
The Superintendent found that Cittadino offered nothing at the departmental disciplinary hearing to mitigate or justify his conduct and concurred in the disciplinary committee's recommendation for a 120 day suspension.
Cittadino appealed to the Civil Service Commission. At the hearing before the hearing examiner Cittadino testified on cross-examination that he knew Rocky Blimier who had a grocery store on St. Louis and Bourbon Streets. He denied any business dealings with Rocky. He said his wife owned video machines and wanted to place them in Rocky's store. Cittadino denied that he agreed to provide Rocky with poker machines.
Cittadino testified that he gave a statement to Sgt. Mason Spong wherein he said he never made an agreement with Rocky. Cittadino said Sgt. Spong played a taped conversation allegedly between Rocky, himself, and a man called Jose. Cittadino admitted that after hearing the tape he told Sgt. Spong that "[i]t could have been me." At the Commission hearing he stated that it could have been him or somebody else. Cittadino claimed he told Sgt. Spong that he did not know if his voice was on the tape. Counsel for N.O.P.D. played the tape (allegedly between Cittadino while off duty, Rocky, and Jose in February, 1987) over Cittadino's objection. The Commissioner reserved his ruling as to admissibility of the tape.
Counsel for N.O.P.D. asked Cittadino if it was his voice on the tape which said: "See, I don't want to lose my job, go to jail or lose my retirement". Cittadino responded: "I have no idea. I talked to Rocky Blimier on several occasions in different places...." The tape was played again and Cittadino stated that he could not recognize the voice.
Counsel for N.O.P.D. produced Cittadino's transcribed statement to Sgt. Spong and Cittadino claimed that he did not recall his answers to the sergeant, but admitted the statement bore his initials. He conceded that in the statement he responded affirmatively when asked whether he recognized his voice on the tape and identified the other person as Rocky.
*1314 At the hearing Cittadino was asked whether during his conversation with Rocky he offered to provide gambling machines and his counsel's objection was sustained because the tape was not in evidence and Cittadino had denied his voice was on the tape. The hearing officer stated that the tape would not be admitted except as a proffer unless Rocky testified. Cittadino did not remember whether he talked to Rocky about pinball or poker machines. He said that he discussed working a detail at Rocky's store, but never talked to Rocky at Popeyes on Canal Street.
Cittadino was asked to reconcile his admission to Sgt. Spong that it was his voice on the tape and his denial at the hearing. He stated that Sgt. Spong insinuated that it was his voice and he "just went along with him."
On direct examination Cittadino testified that at the administrative hearing Lt. Gagnard explained the types of illegal machines and that was his first knowledge about the matter. Cittadino claimed his relationship with Rocky only involved his attempt to work a detail at Rocky's store. He said he did not remember trying to sell Rocky poker machines and disclaimed knowing a man named Jose. Although Cittadino disclaimed owning poker machines, on re-cross he admitted that his wife owned pinball machines. Cittadino stated he had conversations with Rocky and one might have occurred in February, 1987.
Sgt. Spong of N.O.P.D. Internal Affairs (at the time of the incident) testified that he taped an interview with Cittadino on June 21, 1988 after informing him of the Police Officer's Bill of Rights. Cittadino told Sgt. Spong that he did not recall a conversation with Blimier about poker or pinball machines. Sgt. Spong said after he played the tape, Cittadino admitted it was his voice and Rocky's voice. When the sergeant asked whether their conversation occurred at Popeyes on Canal Street, Cittadino thought that was probably the location. At the hearing Sgt. Spong identified the third voice on the tape as belonging to Jose Torrez, an F.B.I. agent. The transcribed interview statement signed by Cittadino and the departmental disciplinary letter were admitted. A transcript of the taped conversation allegedly of Cittadino, Rocky and Jose was proffered.
The Civil Service Commission noted in its opinion that only Cittadino and Sgt. Spong testified before the hearing examiner. The Commission noted the testimony of Sgt. Spong that Cittadino admitted it was his voice on the tape recording during the course of the departmental administrative investigation. Cittadino equivocated as to that fact at the hearing, but he did admit meeting Rocky and discussing selling video machines. Although the Commission noted that Cittadino denied the machines could be used for illegal purposes, it found his testimony "was self-serving and much less than candid."
The Commission concluded that Cittadino offered to sell illegal gaming machines and the City had carried its burden of proof. Noting that the 120 day suspension was a severe disciplinary action, the Commission declared that under these circumstances the suspension was not unduly harsh because Cittadino was a correctional officer sworn to uphold the law and the department has a right to expect its officers to conduct themselves in a manner that is above reproach.

THE LAW
A permanent classified City Civil Service employee cannot be subjected to disciplinary action except for cause expressed in writing. He may appeal from such disciplinary action to the City Civil Service Commission and the appointing authority has the burden of proof on appeal as to the facts. La. Const. Art. X, § 8. The Commission's decision is subject to review on any question of law or fact upon appeal to the court of appeal. La. Const. Art. X, § 12(B).
The Commission has a duty to decide independently from the facts presented *1315 whether the appointing authority had good or lawful cause for taking the disciplinary action and, if so, whether the punishment imposed is commensurate with the dereliction. Walters v. Department of Police of the City of New Orleans, 454 So.2d 106 (La.1984).
Legal cause exists whenever an employee's conduct impairs the efficiency of the public service in which the employee is engaged. Fisher v. Department of Health and Human Resources, Office of Human Development, 517 So.2d 318 (La.App. 1st Cir.1987). The appointing authority has the burden of proving the impairment. La. Const. Art. X, § 8(A); Neustadter v. Sewerage and Water Board of New Orleans, 544 So.2d 1289 (La.App. 4th Cir.1989). The appointing authority must prove by a preponderance of the evidence the occurrence of the complained of activity and prove that the conduct complained of impaired the efficiency of the public service and that it bears a real and substantial relationship to the efficient operation of the public service. Newkirk v. Sewerage and Water Board, 485 So.2d 626 (La.App. 4th Cir.1986), writ denied 489 So.2d 920 (La.1986).
The burden of proof is less in a Civil Service Commission hearing than in a criminal proceeding. Although the facts must be clearly established, they need not be established beyond a reasonable doubt as in a criminal trial. Lombas v. Department of Police, 467 So.2d 1273 (La.App. 4th Cir. 1985); Herbert v. Department of Police, 362 So.2d 1190 (La.App. 4th Cir.1978).
The usual rules of evidence need not apply in administrative hearings. Hearsay may be admissible. Nevertheless the Commission findings must be based on competent evidence and incompetent evidence will be disregarded by the appellate court on review. Dundy v. Louisiana State University, 394 So.2d 650 (La.App. 1st Cir.1980); Michel v. Department of Public Safety, Alcoholic Beverage Control Board, 341 So.2d 1161 (La.App. 1st Cir.1976), writ denied 343 So.2d 1078 (La.1977). See also Sanders v. Administrator of Office of Employment Security, 520 So.2d 1091 (La. App. 3rd Cir.1987).
The appropriate standard for an appellate court to review the Civil Service Commission ruling is as follows:
In reviewing the commission's findings of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. In judging the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious or characterized by abuse of discretion.
Lombas, 467 So.2d at 1275, quoting Walters v. Department of Police of the City of New Orleans, 454 So.2d at 114.

ANALYSIS
The hearing examiner ruled the tape was inadmissible because neither Rocky nor Jose testified and Cittadino denied it was his voice and a transcript of the tape was proffered. Sgt. Spong testified that Cittadino in his statement denied having a conversation with Rocky during which he offered to supply poker machines until he was confronted with the tape of their conversation. During his statement to Sgt. Spong Cittadino claimed he could not supply such machines. When interrogated by Sgt. Spong as to whether his statements to Rocky and Jose that he could provide poker machines were true, Cittadino claimed he was merely making conversation. The Commission felt Cittadino's testimony that the machines could not be used for illegal purposes was self-serving and not candid. Sgt. Spong's investigation and Cittadino's statement to him indicate that Cittadino spoke to Rocky about obtaining poker machines and then denied the conversation until he was faced with the tape. There is competent evidence in the record to substantiate the findings of the Commission that Cittadino had offered to sell illegal gaming machines.
*1316 The disciplinary action was based on legal cause because Cittadino's conduct as a police officer offering to obtain poker machines would impair the efficient operation of the department. The punishment was commensurate with the infraction.
We conclude the Commission did not manifestly err by finding that N.O.P.D. carried its burden of proof. The Commission was not arbitrary, capricious and it did not abuse its discretion by suspending Cittadino for 120 days.
The Civil Service Commission ruling is affirmed.
AFFIRMED.