JjKIRBY, Judge.
Plaintiff, Pamela Floyd, appeals the decision of the Civil Service Commission of the City of New Orleans upholding the New Orleans Police Department’s termination of her employment as a police officer.
In a letter to plaintiff dated April 3, 1998, NOPD Superintendent of Police Richard Pennington notified plaintiff of her dismissal from the NOPD. In this letter, Pennington stated that an investigation by the NOPD Public Integrity Division determined that on October 6, 1997, plaintiff fired a warning shot in the direction of her ex-boyfriend and failed to report that firearm discharge. The letter also stated that on another unknown date, prior to the October 6, 1997 incident, plaintiff fired a warning shot during an argument with her ex-boyfriend inside her apartment and also failed to report that *1139 firearm discharge. Pennington also stated that on August 16, 1994, plaintiff reported that a firearm was stolen from her residence. The weapon was recovered several days later, but plaintiff failed to report the recovery to her insurance company or the police department, and failed to | ¿notify the National Crime Information Center (N.C.I.C.) that the firearm had been recovered.
Superintendent Pennington further stated that after reviewing the investigative report, he found that plaintiffs conduct constituted violations of NOPD rules regarding moral conduct (specifically, adherence to the law prohibiting the illegal possession of stolen things), and professional conduct and performance of duty (specifically, the rules regarding use of force and discharge of police firearms.) He also stated that plaintiffs conduct was contrary to the standards of service to be maintained by New Orleans police officers. Pennington concluded the letter by stating that, based on plaintiffs violation of these rules, he approved the penalty of dismissal recommended by the bureau chief that conducted the hearing in this matter. He noted that at that hearing, plaintiff offered nothing that would tend to mitigate, justify or explain her behavior in question. Accordingly, Pennington informed plaintiff that her employment was terminated effective April 4, 1998. Plaintiff appealed that decision to the Civil Service Commission.
Jay Alan Ginsberg, the Civil Service Commission hearing examiner, conducted a healing in this matter on September 17, 1998, and issued a report dated November 28, 1998. In that report, Ginsberg first noted that the parties stipulated that the facts contained in the termination letter from Superintendent Pennington are true. Therefore, the only issue before the Commission was whether or not plaintiff provided mitigating evidence to justify a lesser penalty.
|3Ginsberg stated that plaintiff offered the testimony of Divisional Commander Captain Craig Jennings and Police Officer Steven Reboul. Both officers testified that plaintiff was a good employee with no disciplinary problems, but both stated that they noticed significant changes in plaintiffs behavior before the October 1997 incident in question. Captain Jennings recommended a penalty of long-term suspension rather than termination.
The report states that plaintiff testified that she was diagnosed with Graves Disease, and that the medication she took to treat this disease caused a chemical imbalance, which caused her to act irrationally. She testified that the condition was now under control. Plaintiff further stated that she did not act intentionally when she failed to report the recovery of her stolen weapon, and when confronted, she immediately paid back the insurance money that she had previously recovered.
Ginsberg then stated that Assistant Superintendent Dwayne Johnson testified that plaintiff failed to raise any of these issues during the pre-termination hearing that he conducted. Johnson also testified that he would not have changed his recommendation of termination even if plaintiff had raised these issues, because plaintiff could have availed herself of sick leave while she was undergoing treatment for her illness.
Based on the testimony offered at the Commission hearing, Ginsberg concluded that plaintiffs medical condition does not excuse her actions. He noted that while her condition may have exacerbated the situation that caused her to fire her weapon twice, she is still responsible for taking these actions. Accordingly, [4Ginsberg concluded that the Appointing Authority (NOPD) acted within its authority in de *1140 termining that plaintiffs conduct warranted termination of her employment. His report recommended that the Civil Service Commission dismiss plaintiffs appeal.
The Civil Service Commission rendered its decision dismissing plaintiffs appeal on May 30, 2000. The Commission noted four factors that made this particular case a disturbing one to adjudicate: 1) the plaintiff had a good work history; 2) plaintiff discharged her weapon not once, but twice at an ex-boyfriend and subsequently failed to report the firearm discharges; 3) plaintiff was assigned to the N.C.I.C, at the time her firearm was reported stolen and subsequently recovered, causing the Commission to strongly presume that plaintiff knew the policies and procedures for reporting firearms as stolen and later recovered; and 4) plaintiff never explained during the pre-termination mitigation hearing that she was suffering from Graves Disease.
With regard to this fourth factor, the Commission noted Deputy Superintendent Dwayne Johnson’s testimony that plaintiff was a full-duty (commissioned) police officer with N.C.I.C. during the episodes in question; she was not on sick leave. Also, NOPD rules require officers to report their illnesses and medications to their supervisors; yet there was no report on plaintiffs illness and medication in her NOPD file. As to the two times that plaintiff discharged her weapon, the Commission noted the additional seriousness of this matter that would have resulted if the ex-boyfriend or some other innocent party had been struck by |sone or more of those bullets. In a medical report obtained at the request of the Commission, Dr. Michael Bryer-Ash, one of plaintiffs treating physicians, stated on September 20, 1996 as follows: “This patient is under my care and is being treated for Graves Disease. This condition may take several weeks to respond to therapy and may cause fatigue, weakness, and tiredness. Excessive physical exertion and stress should be avoided.”
At the conclusion of the Commission’s decision, it stated that based upon the preponderance of the evidence, the Commission found that the Appointing Authority (NOPD) acted within its authority when it determined that the plaintiffs conduct warranted termination. However, the Commission noted that the testimony indicated that if plaintiffs medical condition becomes regulated with proper medical attention, she would not be prevented from seeking reinstatement. Plaintiff now appeals the Commission’s decision to this Court.
In her appeal, plaintiff argues that the Civil Service Commission acted arbitrarily, capriciously and contrary to the law and facts in upholding the NOPD’s termination of her employment. In Smith v. New Orleans Police Department, 99-0024, pp. 5-6 (La.App 4 Cir. 9/22/99), 743 So.2d 834, 837-838, writ denied, 99-3242 (La.1/14/00), 753 So.2d 221, this Court set forth the standard of appellate review regarding civil service disciplinary cases as follows:
In civil service disciplinary cases, an appellate court is presented with a multifaceted review function. Walters v. Department of Police of the City of New Orleans, 454 So.2d 106 (La.1984). First, as in other civil matters, deference will be given to the factual conclusions of the Commission. Hence, in deciding whether to affirm the Commission’s factual findings, a |r,reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. Walters, supra.
[[Image here]]
Second, in evaluating the Commission’s determination as to whether the disciplinary action is both based on legal *1141 cause and commensurate with the infraction, the court should not modify the Commission’s order unless it is arbitrary, capricious, or characterized by abuse of discretion. La. R.S. 49:964.
Legal cause exists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La.App. 4th Cir.1990). The Appointing Authority has the burden of proving the impairment. La. Const. Art. X, Sec. 8(A). The appointing authority must prove its case by a preponderance of the evidence. Cittadino, supra.
“Arbitrary or capricious” can be defined as the lack of a rational basis for the action taken. Shields v. City of Shreveport, 579 So.2d 961 (La.1991). A reviewing court should affirm the Civil Service Commission conclusion as to existence or cause for dismissal of a permanent status public employee when the decision is not arbitrary, capricious, or an abuse of the Commission’s discretion, as presented in this case.
Employees with the permanent status in the classified civil service may be disciplined only for cause expressed in writing. La. Const., Art. X, Sec. 8(A). Disciplinary action against a civil service employee will be deemed arbitrary and capricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the public service. Newman v. Department of Fire, 425 So.2d 753 (La.1983).
In reviewing the Commission’s findings of fact, this Court’s appropriate standard of review suggests that this Court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. If the Commission’s order is not arbitrary, capricious or characterized by abuse of discretion, this Court should not modify the Commission’s decision. Cittadino, supra.
17Plaintiff contends that her good work history and disciplinary record and her Graves Disease, which likely caused her irrational behavior, were strong mitigating factors that should have been considered by the Appointing Authority. She argues that the penalty of termination should only be used in the most egregious of offenses, and is unusually harsh under her particular circumstances. She claims that her supervisors were aware of her disease and were comfortable with her job performance.
In response to plaintiffs arguments, the attorneys for NOPD noted that the first time plaintiff mentioned her disease was at the Civil Service Commission hearing. Plaintiff did not offer her disease as an explanation for her behavior at the pre-termination hearing conducted by the NOPD Public Integrity Division, and plaintiffs NOPD file did not contain any medical reports showing that plaintiff was being treated for Graves Disease. NOPD argues that as a full-time commissioned officer, any medical condition for which plaintiff was being treated should have been noted in her NOPD file. Plaintiff did not offer the testimony of any physician or submit any of her medical reports at the Civil Service Commission hearing; plaintiffs testimony was the only evidence presented at the hearing as to her medical condition. The only reason that the Commission had the statement of Dr. Bryer-Ash was because the writer of the Commission’s report requested plaintiffs medical records “to objectively supplement the record.” NOPD’s attorneys argue that the procurement of these records by the Commission | Swas highly irregular and outside the scope of authority of the Commission and should not be considered by this Court.
*1142 After reviewing the entire record, we find that the penalty of termination of employment was warranted in this case for the reasons assigned by the Civil Service Commission. We need not address the issue of the procurement of plaintiffs medical records by the Commission because the Commission dismissed plaintiffs appeal even after reviewing these records, and we find that the Commission’s decision was not arbitrary, capricious or characterized by an abuse of discretion. Furthermore, we find that the Commission’s decision was neither manifestly erroneous nor clearly wrong.
For these reasons, we affirm the termination of plaintiffs employment as a police officer with the New Orleans Police Department.
AFFIRMED.