PATRICIA RIVET MURRAY, Judge.
The New Orleans Police Department (the “Department”) appeals the decision of the Civil Service Commission of the City of New Orleans (the “Commission”) modifying the suspension imposed against the defendant, Horace Smith (“Officer Smith”), by Richard J. Pennington, the Superintendent of the New Orleans Police Department (the “Superintendent”). For the reasons that follow we reverse the decision of the Commission and reinstate the thirty day suspension.

FACTS AND PROCEDURAL HISTORY

On July 25, 1998, a private citizen, Mr. Alim Johnson[1], was injured in a physical altercation with Albert Macklin[2], who, at the time, was a Correctional Officer I on suspension from the Department. Mr. Holmes had been asked to leave a service station convenience store by a cashier who refused to sell him cigarettes. Mr. Johnson left the store but remained in the parking lot of the service station. Mr. Macklin approached Mr. Johnson in the parking lot and requested that he leave the premises. When Mr. Johnson refused to do so, a physical altercation occurred. During the altercation Mr. | ?MackIin struck Mr. Johnson in the head with an expandable baton called an asp, and Mr. Johnson was injured.
Some time after the physical altercation was over and Mr. Johnson had left the scene, Officer Smith, responding to a page from the service station employees, arrived at the scene of the altercation. He was informed by Mr. Macklin that there had been a fight. When he learned that Mr. Macklin. had not reported the incident, Officer Smith called the police dispatcher and reported a “103”, which is a disturbance, and designated the incident as “NAT”, which is an acronym -for “necessary action taken”.
The procedures of the Department required that the altercation be reported to a supervisor and that an investigation be *645 conducted. Officer Smith, however, reported the incident to the police dispatcher only as a disturbance for which the necessary action had been taken; in fact, even this information was incorrect.
An investigation of the altercation at the service station was later undertaken by the Public Integrity Division of the Department. Officer Smith was found guilty on charges of neglect of duty and lack of professionalism. He was given an opportunity to present facts in mitigation of his conduct and to explain that conduct at a hearing before the Disciplinary Committee of the Department.- The Committee recommended that Officer Smith receive a thirty day suspension, fifteen days for neglect of duty and fifteen days for lack of professionalism.
lain a letter dated March 15, 2000, from the Superintendent to Officer Smith, the results of the investigation by the Public Integrity Division of the Department were related as follows: [1]
This investigation determined that on July 26, 1998, at or about 12:10 AM, while at 3101 South Carrollton Avenue, you neglected your duty when you responded to a scene and learned a Correctional Officer Albert Macklin had been involved in a physical altercation where [sic] a Mr. Lem Holmes, who received visible injuries. You contacted the dispatcher and requested an item number for a signal 103 (Disturbance) and marked the disposition up N.A.T. (Necessary Action Taken). You failed to give the dispatcher the correct information, failed to contact a supervisor and failed to insure the welfare of Mr. Holmes. Your failure resulted in the required reports not being prepared and brought discredit to the department.
The Superintendent stated in the March 15 letter that he had found that Officer Smith’s conduct on July 26, 1998, violated the Department’s rules on professional conduct and performance of duty. In that letter, the Superintendent notified Officer Smith that he had been suspended from the Department for thirty working days.
Officer Smith appealed the Superintendent’s decision to the Commission. The Commission made the following determination:
The Appointing Authority [the Department] has established that Officer Smith neglected his duty when he failed to contact his supervisor after spe'aking to Macklin. As a result, Officer Smith reported the incident inaccurately. However, Officer Smith acted in good faith, and merely made a mistake in judgment. The Appointing Authority offered no evidence that Officer Smith acted unprofessionally. Also, the record establishes that Officer Smith was unaware that Mr. Johnson was injured and allowed to leave the scene of the incident.... He •merely appeared on the scene after the fact and heard the version of the incident offered by Macklin. His call to the dispatcher did not interfere with the investigation of the incident or cause any administrative problems. Thus, the Appointing Authority erred by categorizing the violation as serious. The violation should have been categorized as minor.
| ¿Because the maximum penalty recommended by the Department’s penalty schedule for a first time minor violation is five days, the Commission reduced Officer Smith’s suspension from thirty days to five days. The Commission also ordered the Department to return to Officer Smith twenty-five days of pay and all emoluments of employment.
The Department has appealed the Commission’s decision to this court. The Department’s position is that the Commission *646 acted arbitrarily and capriciously in reducing the suspension imposed by the Superintendent after cause for discipline had been proven.

STANDARD OF REVIEW

In Walters v. Department of Police, 454 So.2d 106 (La.1984), the Louisiana Supreme Court discussed the standard of review for an appeal of a city civil service commission decision as follows:
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. He may appeal from such disciplinary action to the City Civil Service Commission, and the burden of proof on appeal, as to the facts, is on the appointing authority. La. Const. Art X, § 8.
... The Commission’s decision is subject to review on any question of law or fact upon appeal to the appropriate court of appeal. La. Const, art. X, § 12(B).
This court has formulated jurisprudential precepts to guide the Commission and the courts of appeal in applying these constitutional principles. “Cause” for the dismissal of a person who has gained permanent status in the classified civil service has been interpreted to include conduct prejudicial to the public service in which the employee in question is engaged or detrimental to its efficient operation. The Commission has a duty to decide independently from the facts presented whether the appointing authority has good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. A reviewing court should not reverse a commission conclusion ... unless • the Indecision is arbitrary, capricious or an abuse of the commission’s discretion.
... Accordingly, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review in deciding whether to affirm the commission’s factual findings.
... Due concern both for the intention of the constitution and for the boundaries between the functions of the commission and of the court, however, demands that a reviewing court exercise other aspects of its review function with more circumspection. In reviewing the commission’s finding of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. In judging the commission’s exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the commission’s order unless it is arbitrary, capricious or characterized by abuse of discretion. Id. at 113-14 (citations omitted).
The Louisiana supreme court has determined that “arbitrary and capricious” in the context of a civil service commission decision means that there is no rational basis for the action taken. Bannister v. Department of Streets, 95-0404 (La. 1/16/96, 666 So.2d 641). In Newman v. Department of Fire, 425 So.2d 753 (La. 1983), the supreme court discussed the arbitrary and capricious standard as follows:
Disciplinary action against a civil service employee will be deemed arbitra^ and capricious unless there is a real and substantial relationship between the improper conduct and the “efficient operation” of the- public service. Id. at 754.
In the Newman case, the Court discussed the legal cause required for the *647 imposition of a disciplinary action. The supreme court stated that “[t]he appointing authority (Superintendent) must demonstrate, by a preponderance of the evidence, that the conduct did in fact impair the efficiency and orderly operation of the public service.” Id. See also Bush v. New Orleans Department of Public Works, 2001-0844 (La.App. 4 Cir. 1/28/02), 806 So.2d 977; Mocelli v. Department of Police, 98-0253 (La.App. 4 Cir. 9/9/98), 718 So.2d 1021; Palmer v. Department of Police, 97-1593 (La.App. 4 Cir. 1/28/98), 706 So.2d 658; Cittadino v. Department of Police, 558 So.2d 1311 (La.App. 4 Cir. 1990).
In Branighan v. Department of Police, 362 So.2d 1221 (La.App. 4 Cir.), cert. denied, 365 So.2d 247 (La.1978), this court discussed the requirements that must be met before a civil service commission can make a change in the disciplinary action taken by an appointing authority. This court stated:
The legal basis for any change in a disciplinary action can only be that sufficient Cause [sic] for the action was not shown by the appointing authority. The protection of civil service employees is only against firing (or other discipline) without cause.” Id. at 1221 (footnote omitted).
In Stevens v. Department of Police, 2000-1682 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, this court discussed the scope of the authority a civil service commission has in reviewing a disciplinary action. This court stated:
The Commission has the authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. However, the authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty. Id. at 625-26 (citations omitted).
See also Wilson v. New Orleans Police Department, 2000-2484 (La.App. 4 Cir.12/19/01), 804 So.2d 838; Palmer v. Department of Police, 97-1593 (La.App. 4 Cir. 1/28/98), 706 So.2d 658.

\ .DISCUSSION

Chief Roñal Serpas, assistant superintendent and chief of operations of the Department testified at the Commission hearing regarding Officer Smith. Chief Serpas gave the answers in the following testimony:
Q. Talk to me for a minute about Officer Smith. What is it exactly that— How was he involved, do you recall?
A. I believe Officer Smith said that he received a phone call at his house that nobody showed up to work the detail and that for some reason he decided to go to the detail site; and that in regard to that he had information available to him that an altercation had ensued. And Officer Smith, the thing that offered mitigation to him that resulted in a lesser penalty was he at least tried to do something. In his case, he did notify the dispatcher of a 103, marked it up necessary action taken to himself, which was the inappropriate thing to do—
Q. Why is that?
A. Because if he had information available to him that the officers at the detail site earlier had gotten involved in a fight, then he should have notified the supervisor that that was the information he had.
Q. Isn’t that what he did, though?
A. No, I don’t think he notified—
Q. He-
A. I think he just notified the dispatcher 103 NAT to me, which is cer *648 tainly not the same as this was an incident involving police officers and the use of force, please notify a supervisor. It’s drastically different. So his discipline was somewhat less because he at least got on the radio and did something. (Damien Cornia and Horace Smith v. Department of Police, Civil Service Commission, City of New Orleans, Docket No. 6155 and 6167, Testimony of Chief Roñal Serpas, vol. 4, pages 18-19)
Sergeant Gary Gremillion, the officer in the Police Integrity Division of the Department who investigated Officer Smith’s conduct, gave the following | ¡¡testimony at the Commission hearing when questioned by Officer Smith, who was appearing in proper person:
A. In regards, in regards to yourself, what I said was that Officer Smith, who arrived later on the scene, contacted the Police Department, asked for an item, for a 103, and marked it up NAT. And what I said was the information that he had at the time, being you, was incorrect information. You did not know the extent of what occurred. And you asked for an item number and marked up an incident incorrectly because it was not a 103. It was a completely different incident.
[[Image here]]
A. It did not ensure ... the required police reports to be written ... and, most of all, did not ensure the medical aid for the victim, Alim Holmes Johnson.
[[Image here]]
A. Again, I believe that that night you had your police radio, you all should have simply contacted a car and/or supervisor to come over there on an incident that occurred.
[[Image here]]
A. You shouldn’t have called it in as a 103 and made it a Necessary Action Taken with the limited information that you had.
[[Image here]]
A. Ultimately that’s why I found the professionalism, because it certainly brought discredit to the Police Department, to the victim’s family, and to the victim himself.
[[Image here]]
Q. So the neglect came in by not informing the rank?
A. Right.
[[Image here]]
A. And/or calling a car, again, to ensure that the proper paperwork be done on that incident, the police reports be written....
(Damien Cornia and Horace Smith v. Department of Police, Civil Service Commission, City of New Orleans, Docket No. 6155 and 6167, Testimony of Sergeant Gary Gremillion, vol. 2, pages 42-44)
In the letter, dated March 15, 2000, from the Superintendent to Officer Smith notifying him of the disciplinary action to be taken against him, the Department’s rule regarding neglect of duty was quoted in relevant part as follows:
NEGLECT OF DUTY
4. NEGLECT OF DUTY
a. Each member, because of his grade and assignment, is required to perform certain duties and assume certain responsibilities. A member’s failure to properly function in either or both of these areas constitutes a neglect of duty.
c. The following acts or omissions to act, although not exhaustive are considered neglect of duty:
1. Failing to take appropriate and necessary police action;
*649 Both Chief Serpas and Sergeant Gremil-lion testified that Officer Smith neglected his duty in giving incorrect information to the dispatcher that he called and in failing to call a supervisor to report the incident involving Mr. Macklin. In neglecting to obtain the information necessary to properly report the incident involving Mr. Macklin, Officer Smith failed “to take appropriate and necessary police action” as is required by the Department’s rule on neglect of duty. This court finds that the Superintendent was correct in determining that Officer Smith had violated the rule on neglect of duty.
In its written decision, the Commission states that “[t]he Appointing Authority has established that Officer Smith neglected his duty when he failed to contact his supervisor after speaking to Macklin”. Nevertheless, the |10Commission’s decision also states that “[h]owever, Officer Smith acted in good faith, and merely made a mistake in, judgment.”
In Stevens v. Department of Police, 2000-1682 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, this court stated:
The Commission has the authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. However, the authority to reduce a penalty can only be exercised if there is insufficient cause for imposing the greater penalty. Thus, in the instant case, unless the Commission determined that there was insufficient cause for the appointing authority to impose the fifteen day suspension, the penalty must stand.
The appointing authority is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause. Id. at 6 and at 625-26 (citations omitted).
See also Bush v. New Orleans Department. of Public Works, 2001-0844 (La. App. 4 Cir. 1/23/02), 806 So.2d 977; Macelli v. Department of Police, 98-0253 (La. App. 4 Cir. 9/9/98), 718 So.2d 1021; Chapman v. Department of Police, 97-1384 (La. App. 4 Cir. 1/28/98), 706 So.2d 656, cert. denied, 98-0828 (La.5/8/98), 719 So.2d 55; Palmer v. Department of Police, 97-1593 (LaApp. 4 Cir. 1/28/98), 706 So.2d 658.
This court finds that in determining that Officer Smith “merely made a mistake in judgment” and in reducing his suspension for neglect of duty from fifteen days to five days, the Commission arbitrarily and improperly substituted its judgment for that of the Superintendent. There was ample evidence that Officer Smith neglected his duty, and it is within the Superintendent’s discretion to impose a fifteen day suspension for that violation of the Department rules.
Inin the March 15 letter from the Superintendent to Officer Smith notifying him of the disciplinary action to be taken, the Department’s rule on professionalism was quoted as follows:
Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual or otherwise act in a manner which brings discredit to the employee or the Police Department. (Emphasis added.)
In his testimony at the Commission hearing, Sergeant Gremillion testified that Officer Smith’s failure to take the proper action “certainly brought discredit to the Police Department”. This court finds that Sergeant Gremillion and the Superintendent were correct in concluding that Officer Smith did not meet the standards *650 established in the Department’s rule on professionalism.
The Commission states in its decision that “[t]he Appointing Authority offered no evidence that Officer Smith acted unprofessionally”. This court disagrees with that conclusion. Sergeant Gremillion of the Department’s Police Integrity Division established in his testimony at the Commission hearing that Officer Smith’s failure to properly follow police procedures and his making an inaccurate report of the incident involving Mr. Macklin “certainly brought discredit to the Police Department”. We find that Officer Smith violated the Department’s professionalism rule by acting in a manner that brought discredit to the Department and that the Commission acted arbitrarily in dismissing the Superintendent’s finding of a violation of the Department’s professionalism rule.

\ ^CONCLUSION

Based on the foregoing discussion, this court finds that the Commission acted arbitrarily in substituting its judgment for that of the Superintendent by reducing the fifteen day suspension for neglect of duty to a five day suspension. This court also finds that the Commission acted arbitrarily in failing to find that the Department offered evidence of Officer Smith’s violation of the Department’s rule on professionalism and in suspending the entire fifteen day suspension imposed by the Superintendent for that violation. Accordingly, the judgment of the Commission is reversed and the thirty day suspension imposed upon Officer Smith by the Superintendent is reinstated.
REVERSED.

. Mr. Johnson is referred to in some parts of the record as Alim Holmes Johnson and in some parts of the record as Mr. Holmes.

. Mr. Albert Macklin is referred to in some parts of the record as Albert Maclan.