MAX N. TOBIAS, JR., Judge.
1 This case comes before us on remand from the Louisiana Supreme Court to determine the merits of the two remaining issues on appeal. Marks v. New Orleans Police Dept., 06-0575 (La.11/29/06), 943 So.2d 1028. We previously pretermitted a discussion of all assigned errors on appeal, having found one error of law (in particular, the application of La. R.S. 40:2531 B(7)) necessarily mooted consideration of the remaining errors. See Marks v. New Orleans Police Dept., 05-0307 (La.App. 4 Cir. 2/8/06), 925 So.2d 622. The Supreme Court reversed, holding instead that the language in La. R.S.40:2531 B was directory and not mandatory regarding the time limit to investigate charges against an officer. Marks, 06-0575 at p. 13, 943 So.2d at 1037. Insofar as the Supreme Court invalidated our finding that an error of law was committed, we now consider the remaining errors assigned by the appellant, Sergeant William Marks (“Marks”).
On 1 November 2002, Marks, an 18-year veteran of the New Orleans Police Department (“NOPD”), borrowed an unmarked police cruiser assigned to a subordinate officer to drive to Milwaukee, Wisconsin, to pick up his girlfriend, Felicia Edwards (“Edwards”) and a female friend of Edwards who was unknown to Marks. On the return trip to New Orleans, Marks was stopped by an Illinois state Ltrooper for speeding. The trooper became suspicious of Marks and his passengers and searched the vehicle (with Marks’ consent) and its occupants. The trooper’s search of the vehicle revealed a purportedly stolen firearm in the trunk of the cruiser. A narcotics dog also seemingly found a small amount of marijuana in the vehicle.[1] Further, Edwards’ friend had an outstanding warrant for her arrest. During the stop, Marks repeatedly asked the state trooper not to report the stop to the NOPD (“the appointing authority”). Marks claimed that he did not know that one of his passengers was carrying marijuana and further that there was an illegal weapon in the trunk of the car. The trooper declined to press charges against Marks for either the weapon or marijuana violation, but did issue him a speeding ticket and notified the NOPD.
The appointing authority conducted a hearing before Deputy Superintendent Warren Riley, and issued a formal letter of reprimand and termination on 2 October 2003. The appointing authority levied the following disciplinary actions against Marks: (a) for speeding, Marks was suspended for 10 days; (b) for untruthfulness, he was suspended for 30 days; (c) for lack of professionalism, he was suspended for 5 days; and (d) for taking an unmarked New *990 Orleans police car from New Orleans to Milwaukee, he was suspended for 30 days. Additionally, Marks was immediately terminated, the stated cause for which was transporting two civilians in the police cruiser and abuse of position.[2]
| sMarks appealed his termination, citing three errors, two of which remain for our consideration. First, he asserts that he was suspended for violations that were not proven at the civil service hearing. Second, he asserts that the penalty of termination from the department was not commensurate with the conduct in question. First, we look to whether the evidence presented to the City Civil Service Commission (“CSC”) was sufficient to warrant disciplinary action against Marks.
At the hearing, which was held on 3-4 December 2003, a hearing officer viewed the videotape of the stop by the Illinois state trooper, and accepted testimony from Superintendent of Police Eddie Compass, Marks, and Sergeant Michael Harrison (the NOPD’s investigating officer). The videotape (more than two hours in length) showed the entirety of the stop by the state trooper in Illinois. On the videotape, Marks is heard asking the trooper to not report the stop to the appointing authority, because it would mean a lot of trouble for him, specifically because he feared losing his job.
At the hearing, the parties stipulated to a number of facts: Marks was traveling at 74 m.p.h. in a 65 m.p.h. zone in Illinois; Marks took an NOPD vehicle out of state without approval of the appointing authority; and Marks did transport two civilians in the police cruiser. A review of the videotape reveals that Marks did ask the state trooper that made the stop to not report the violation to the appointing authority. It is uncontroverted that a loaded semi-automatic weapon was found in the trunk of the cruiser. However, Marks asserted that he had no knowledge of the illegal weapon found in the trunk, and did not lie about its presence. He further argued that he asked the state trooper not to report him in a 14personal capacity, and not in his professional capacity, and therefore that his asking for leniency was not an abuse of his position.
Following the hearing, the hearing officer issued a lengthy opinion in which he found that Marks’ termination was not justified. He found that the appointing authority did not prove that Marks abused his authority in asking the trooper for leniency, even if it was undisputed that Marks was guilty of improperly transporting civilians out-of-state. The hearing officer opined that Marks’ termination was not justified given the totality of the circumstances surrounding the incident, and further that the Illinois trooper was racially motivated in the way he conducted the stop and ultimately searched the vehicle and its occupants.[3] Specifically, the hearing officer found that Marks asked for leniency from the trooper as any private citizen would do after being stopped for speeding, and not in an attempt to use his position as a police officer to avoid criminal prosecution. Further, he found the suspension for speeding “ludicrous” insofar as Marks was ticketed for traveling 74 m.p.h. in a 65 m.p.h. zone and paid the fine. He upheld, however, the 30-day suspension for taking the police vehicle out of state, insofar as the factual basis of this charge was stipulated to by Marks and required *991 no further proof on the part of the appointing authority.
The CSC rejected the hearing officer’s recommendation, and upheld Marks’ termination by the appointing authority, as well as the other charges of misconduct leading to suspension. In its opinion, the CSC found that “the Appointing Authority has proven its case against [Marks] on all charges and that his conduct | ¿reflects very badly on the integrity and efficiency of the New Orleans Police Department.”
A permanent, classified civil service employee may not be disciplined or terminated except for legal cause and in writing. La. Const, art. X, Sec. 8; Saacks v. City of New Orleans, 95-2074 (La.App. 4 Cir. 11/27/96), 687 So.2d 432. The employee may appeal the disciplinary action to the CSC, and the employer, or the appointing authority, has the burden of proof at the hearing. Specifically, the appointing authority has the burden of proving by a preponderance of the evidence that the complained-of conduct occurred and that it has impaired the efficiency of the public service of the department. Saacks v. City of New Orleans, 95-2074, pp. 48-49 (La.App. 4 Cir. 11/27/96), 687 So.2d 432, 456; Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990). Once the CSC has rendered a decision regarding the employee’s appeal of the disciplinary action, we are bound to uphold the decision of the CSC unless it is “arbitrary, capricious, or characterized by an abuse of discretion.” Gant v. Department of Police, 99-1351, p. 4 (La.App. 4 Cir. 1/5/00), 750 So.2d 382, 384, citing, Walters v. Dept, of Police of New Orleans, 454 So.2d 106, 114 (La.1984); Newman v. Department of Fire, 425 So.2d 753 (La.1983).
First, we look to the offenses that were the stated grounds for termination. The appointing authority terminated Marks on the grounds that he violated the departmental regulations concerning transporting civilians and abuse of position. Chapter 41.29 relative to Transporting Civilians provides:
3. Employees shall not transport civilians to provide a convenience to the civilian (unless for the civilian’s safety) nor shall they allow civilians to ride in a Department vehicle while | (¿hey perform their normal duties, unless authorized by the Superintendent of Police.
It is undisputed that Marks transported two civilians across state lines in a police cruiser owned by the appointing authority; indeed, he stipulated to this fact. Therefore, the appointing authority had no factual burden of proof for this charge. The only burden the appointing authority had with regard to this charge was whether the disciplinary action was commensurate with the complained-of behavior. The CSC found that it was.
The facts underlying one of the stated reasons for termination are stipulated to: Marks admits he transported civilians across state lines in a purely personal capacity. This was clearly in violation of departmental regulations. As the appointing authority pointed out, this not only was misappropriation of city property, but it also potentially exposed the appointing authority to liability unnecessarily. Marks has offered no evidence of circumstances that would mitigate his actions other than he was “messed up” at the time and made a serious error in judgment. Therefore, we do not find that the CSC’s decision to uphold the disciplinary action taken by the appointing authority was arbitrary or capricious considering the record before us. Accordingly, the decision of the CSC is affirmed.
*992 Because we are affirming the grounds for termination of Marks, we pretermit a discussion of the remaining disciplinary action. ■

AFFIRMED.

. Although the search of the vehicle is part of a videotape forming part of the evidence in this matter, the Illinois trooper declined to press charges; the alleged drugs are not visible on the videotape.

. Although Marks received a 75-day suspension, it was never served in light of his immediate termination per his dismissal letter.

. The record before us fails to reflect that the Illinois state trooper acted in an inappropriate manner dealing with Marks.