968 So.2d 1097 (2007)
Fred CARTER and Kevin Boswell
v.
DEPARTMENT OF POLICE.
No. 2007-CA-0372.
Court of Appeal of Louisiana, Fourth Circuit.
October 3, 2007.
*1098 Gary M. Pendergast, Gary M. Pendergast, L.L.C., New Orleans, LA, for Plaintiffs/Appellants.
Penya Moses-Fields, City Attorney, Joseph V. DiRosa, Jr., Chief Deputy City Attorney, James B. Mullaly, Assistant City Attorney, New Orleans, LA, for Defendant/Appellee.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE).
PATRICIA RIVET MURRAY, Judge.
Police Officers Kevin Boswell and Fred Carter appeal the decision of the Civil Service Commission ["the Commission"] upholding the thirty-day suspension imposed *1099 upon each of them by the New Orleans Police Department ["NOPD"]. For the reasons that follow, we affirm.
FACTS AND PROCEEDINGS BELOW
Officers Boswell and Carter are both police officers with permanent status. Each was hired by the NOPD on December 31, 2000, and each was appointed to Police Officer I effective September 28, 2001. They were both assigned to the Fifth District in late August, 2005, when Hurricane Katrina struck the city. On December 1, 2005, the NOPD suspended both officers for thirty days for neglect of duty, citing their absence without authorization from their respective assignments from August 31 until September 4, 2005. They each appealed to the Commission, and requested that their appeals be consolidated, which request was granted. The Commission heard the consolidated appeal on March 17, 2006.
At the hearing, in response to the charge, Officer Boswell did not dispute that he had left the city without authorization for the amount of time cited; Officer Carter conceded that he was gone from the city for three days, but testified that he had reported on September 3, not September 4 as charged. Both officers disputed that they actually had an assignment on August 31 that they could have been charged with abandoning.
The NOPD presented four witnesses. Deputy Superintendent Marlon Defillo testified that he was one of the three commanding officers who had conducted the November 22, 2005 disciplinary hearing regarding the appellants' conduct. As he understood it, both officers had reported to their District station as scheduled on August 28 as the hurricane approached, but had been told by their supervisor to go home and to return at 4:00 p.m. on August 29. The police commanders had considered as a mitigating factor that the officers had been trapped by rising water in Officer Carter's apartment until August 31, at which time they were able to get to the NOPD's temporary command post at the Sheraton hotel. However, Deputy Superintendent Defillo stated that it was unacceptable for the officers to claim that they left because they could not find a supervisor at the Sheraton or at the other temporary command station at Harrah's Casino. Deputy Superintendent Defillo testified that there were several supervisors present at each location, and the officers should have asked for permission to leave if they believed there was an exigent circumstance; he admitted, however, that only an officer with the rank of Deputy Superintendent could have given them permission to leave at that time. Finally, he stated that the police commanders had recommended that a thirty-day suspension be imposed based upon a template, which had been developed by the NOPD command staff to give guidance as to the appropriate disciplinary action based upon the number of days an officer had been absent from his post; he also noted that according to the template, a three-day absence would have triggered the same penalty as a four-day absence.
The NOPD next presented Sergeant Reginald Blanchard, who testified he had met with Officer Carter, who was accompanied by Officer Boswell, at the Sheraton at approximately 1:00 p.m. on August 31. At that time Officer Carter had asked Sergeant Blanchard about how to get put on the payroll for the day, and Sergeant Blanchard had responded that he did not know, but he would get back to them after he had checked with the Captain. Sergeant Blanchard testified that Officer Carter had asked him again several hours later, but he had still not spoken to the Captain at that point. He testified that neither Officer Carter nor Officer Boswell *1100 had ever asked him for permission to leave.
Sergeant Alfred Russell, who was the direct supervisor of Officers Carter and Boswell on August 28, testified that they had reported to the District station on that day but he had instructed all of his officers to go home to ride out the storm and to return at 4:00 p.m. the next day. He then had no further communication with the two officers until September 3, when they had reported to the District station that was operating out of a Walmart.
Sergeant Errol Foy testified that he was the officer who had investigated the appellants' case. He confirmed that he had been assigned the case on September 21, 2005; that he had issued the P.I.B. reports on November 1, 2005; that the disciplinary hearing had been held on November 22, 2005; and finally that the disciplinary letters had been issued to the appellants on December 1, 2005. He noted that this procedure complied with the time limits applicable to disciplinary investigations.
Following the testimony of the NOPD's witnesses, Officer Carter testified in his own behalf. He stated that after he had reported to and had been dismissed by Sergeant Russell on August 28, he had gone to his apartment in New Orleans East accompanied by about six other officers from his District, including Officer Boswell. However, all the officers except Officer Boswell left during the night of August 28. When Officers Carter and Boswell awoke on the second floor of the apartment on the morning of Monday, August 29, they were trapped by water that had risen to six or seven feet on the first floor. As all their equipment was on the first floor except a police radio, which was not functioning, they were unable to communicate with anyone. They remained on the second floor until Wednesday, August 31, when a neighbor with a boat rescued them. They made several trips in the boat helping to rescue other people from the apartment complex and to ferry them to the Crowder overpass, which was the nearest dry land. On one of these trips, they encountered other NOPD officers in a motorized boat; these officers told them there was a command station set up at Harrah's Casino and took them there. At Harrah's they were told the Fifth District was operating out of another command station set up at the Sheraton hotel, so they walked to the hotel. At the hotel they encountered Sergeant Blanchard, who normally handled payroll matters for their District. Officer Carter asked Sergeant Blanchard if they could get on the payroll and get an assignment, but he told them to "chill out" until he could speak to the Captain and got back to them. The two officers remained at the Sheraton approximately six more hours before they saw Sergeant Blanchard again and were told by him that he had not yet spoken to the Captain. At approximately 11:30 p.m., the two officers heard that more levees had been breached, and they saw water coming down Canal Street toward the Sheraton. At this point they asked another officer who had announced he was leaving for Baton Rouge to give them a ride to LaPlace, where Officer Carter had relatives. Officer Carter testified that he and Officer Boswell were dropped off in LaPlace in the early morning hours of September 1, and remained there until September 3, when they returned to New Orleans and reported to a District command station at a Walmart. Officer Boswell then testified that he did not disagree with anything that had been stated by Officer Carter.
Based upon the evidence, the Commission rendered judgment dismissing the officers' consolidated appeal on January 31, 2007. The Commission specifically noted *1101 that the appellants had clearly neglected their duty as police officers by leaving the city without permission for three days during emergency conditions, when they should have stayed at the Sheraton until they were assigned a specific task.
On appeal, Officers Carter and Boswell contend that the Commission erred by upholding their suspensions because their actions did not warrant any discipline, and alternatively, because the discipline imposed was excessive considering the infraction.
APPLICABLE LAW
An employer cannot subject an employee who has gained permanent status in the classified city civil service to disciplinary action except for cause expressed in writing. La. Const. Art. X, § 8(A); Walters v. Department of Police, 454 So.2d 106, 112 (La.1984). The employee may appeal from such a disciplinary action to the Commission. Id. The Commission has a duty to decide independently from the facts presented whether the appointing authority had good and lawful cause for taking the disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. Id. at 113. Legal cause exists whenever the employee's conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311, 1315 (La.App. 4th Cir.1990). The appointing authority bears the burden of proving by a preponderance of the evidence that the conduct complained of occurred and that the conduct impaired the efficiency of the public service. Id. The appointing authority must also prove that the actions complained of bore a real and substantial relationship to the efficient operation of the public service. Id.
In civil service disciplinary cases, the appellate court has a multifaceted standard of review. First, as in other civil matters, deference must be given to the factual findings made by the Commission, which should not be disturbed unless manifestly erroneous or clearly wrong. Second, in evaluating the Commission's determination as to whether the disciplinary action is both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Bannister v. Department of Streets, 95-404, p. 8 (La.1/16/96), 666 So.2d 641, 647 (citations omitted).
DISCUSSION
Applying these legal principles to the facts of the instant case, we find the Commission did not err by dismissing the appeal of Officers Carter and Boswell. The appellants did not dispute that they, after reporting to a superior at the Sheraton hotel, left the hotel and the city without permission for three days. Their leaving without seeking permission to do so justifies disciplinary action. Nor do we find that the suspension imposed was excessive under the circumstances. Concerning this critical time in the city's history, the NOPD had a legitimate objective to maintain uniformity in the penalties imposed upon those officers whose unexcused failure to return to their jobs within a reasonable time after the storm clearly hampered the ability of the Police Department to function effectively during the crisis.
CONCLUSION
Accordingly, we affirm the ruling of the Commission.
AFFIRMED.