MADELEINE M. LANDRIEU, Judge.
|2The plaintiff, Phyllis Kass, appeals the Civil Service Commission’s decision upholding her suspension and the ultimate termination of her employment by the Plaquemines Parish government (“PPG”). For the reasons that follow, we affirm.
FACTS AND PROCEEDING BELOW
Prior to her termination on April 28, 2014, Ms. Kass served as the Superintendent of Planning and Zoning for PPG, a position she had held since 2011. Ms. Kass was promoted to this position when PPG’s former Permitting and Zoning Department was split into two separate divisions — one named Planning and Zoning, and the other named Permitting. Before her promotion, Ms. Kass had worked in the Permitting Department for more than twenty years as a secretary and Permit Tech. As Superintendent of Planning and *1105 Zoning, Ms. Kass was responsible for administering and enforcing the parish’s zoning ordinances, reviewing permitting requirements associated with zoning, and reviewing applications for rezoning of land. She reported directly to Mr. Leo Palazzo, the Parish Attorney and the head of PPG’s Legal Department.
On April 14, 2014, Mr. Palazzo met with Ms. Kass and told her that a citizen complaint and an ensuing investigation by the Legal Department had produced evidence that Ms. Kass had five trailers on her property that were there illegally in | .¡violation of PPG permitting and zoning ordinances. Ms. Kass admitted this fact. That same day, Ms. Kass was suspended indefinitely for violating the zoning ordinances that she was responsible for enforcing. The next day, Ms. Kass received a letter from PPG’s Human Resources Manager summoning her to a Pre-Termi-nation meeting on April 21, 2014, at which she would have an opportunity to defend her actions. Following that meeting, Ms. Kass was terminated as of April 28, 2014. The termination letter she received cited her maintenance of five illegal trailers on her property without the necessary permits with full knowledge that her property was not zoned for such activity, and her endangerment of the health and safety of the trailer occupants, as well as of the parish, by having all five trailers illegally hooked up to one utility pole. The letter stated that given Ms. Kass’ position as Superintendent, her actions constituted insubordination of the highest order, gross misconduct, negligence and potentially malfeasance in office.
Ms. Kass appealed her suspension and termination to the Civil Service Commission. After hearing the matter, the Commission rendered a written decision on July 9, 2014 upholding Ms. Kass’ suspension and termination. This appeal followed.
ISSUE
Ms. Kass admits that she violated PPG’s permitting and zoning ordinances, but contends on appeal that the Commission erred by upholding her suspension and termination because:
(1) Her actions did not constitute insubordination, incompetence or improper conduct related to her employment; and
(2) The discipline imposed on her by PPG was not commensurate with her infractions.
|4APPLICABLE LAW
Under Louisiana law, an employer cannot subject a permanent classified civil service employee to disciplinary action except for cause expressed in writing. La. Const. Art. X, § 8(A); Walters v. Dep’t. of Police of City of New Orleans, 454 So.2d 106, 112 (La.1984). Cause for discipline of an employee exists whenever the employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Dep’t. of Police, 558 So.2d 1311, 1815 (La.App. 4th Cir.1990). Applying these principles, an appellate court must decide two factors: (1) whether the appointing authority had good or lawful cause for taking the disciplinary action, and (2) whether the punishment imposed is commensurate with the offense. Harris v. Dep’t of Fire, 2008-0514, p. 11 (La.App. 4 Cir. 7/16/08), 990 So.2d 54, 61 (citing Staehle v. Dep’t. of Police, 98-0216, p. 3 (La.App. 4 Cir. 11/18/98), 728 So.2d 1031, 1033).
The appellate standard of review of a decision by the Civil Service Commission is twofold. First, deference must be given to the Commission’s factual findings, which should not be disturbed unless mani *1106 festly erroneous or clearly wrong. Second, in evaluating the Commission’s determination as to whether the disciplinary action was both based on legal cause and commensurate with the infraction, the appellate court should not modify the Commission’s decision unless it is arbitrary, capricious, or an abuse of discretion. Harris, 2008-0514 at pp. 10-11, 990 So.2d at 61-62 (citing Bannister v. Dep’t. of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647). “Arbitrary or capricious” means there is no rational basis for the action taken. Id.
IbDISCUSSION
At the trial of this matter, PPG presented two witnesses: Mr. Palazzo and Ms. Kass. PPG also introduced relevant sections of the Plaquemines Parish Code of Ordinances (“Code”), photographs taken of Ms. Kass’ property, and other documentary evidence. Ms. Kass did not present any witnesses or evidence in her defense.
Ms. Kass testified that in her position as Superintendent of Planning and Zoning, she was familiar with the parish’s zoning and permitting rules and that it was her responsibility to administer them. She knew that a trailer park was allowed only on property zoned “MH,” (mobile home). Ms. Kass identified Code § 21-2, which defines a “trailer park” as a property containing five or more trailers. She also acknowledged that the Code requires a property owner to have a permit for each trailer on his or her property. She stated that the electrical and sewerage connections for each trailer also have to be inspected and permitted.
Ms. Kass testified that she had a fifty-percent ownership interest in the property upon which she resided, with her daughter and son being the co-owners. She admitted that in March of 2014, there were six trailers on her property, which was zoned “A-2.” She had a permit for the trailer in which she and her husband lived. She did not have a permit for any of the other five trailers, all of which were hooked up to a single utility pole. That utility pole had previously been permitted to service a single trailer that Ms. Kass had lived in prior to Hurricane Katrina. Ms. Kass testified that two of the five additional trailers on her property had been set up with her permission, and that the occupants of those were paying her for utilities. She stated that her husband had given permission for the other trailers to be placed upon her property while she was in the hospital. She ^acknowledged, however, that she was in the hospital for only two days and knew the trailers were on the property for several weeks after she returned home. She testified that she knew the trailers were illegal, but she did not have them removed until the day after Mr. Palazzo questioned her about them. She testified that she did not apply for permits for any of the five trailers because she believed the permit office was not issuing any new trailer permits. She said this belief was based a conversation she had with Mike Metcalf (the head of the Permitting Department), who told her no applications for new trailer parks were being accepted.
Mr. Palazzo testified that the Code requires the landowner to have a permit for each trailer on his property plus separate permits for the electrical and sewer hookups to each trailer. He confirmed that a property zoned “A-2” is allowed a maximum of four trailers — two for which the landowner does not need the approval of the Plaquemines Parish Council, and up to two more if the landowner has secured the Council’s approval for each. No additional trailers would be allowed on the property unless it was rezoned as a trailer park (“MH”). Mr. Palazzo testified that at the *1107 time of Ms. Kass’ violations, there was a huge problem in Plaquemines Parish regarding illegal trailer parks. Mr. Palaz-zo’s department had been sending letters to many landowners who were not in compliance with the Code in an attempt to get them to comply voluntarily. One of the landowners who had received such a letter complained to Mr. Palazzo that Ms. Kass was operating an illegal trailer park. Mr. Palazzo then sent an inspector to Ms. Kass’ property. The inspector took photographs, which showed that there were six trailers, with five being hooked up to one utility pole. Mr. Palazzo testified that he was “shocked” when he saw the photographs and checked the tax records to confirm that the property did belong to Ms. Kass. He stated that Ms. Kass clearly knew the |7zoning and permitting regulations. Mr. Palazzo then set up a meeting with Ms. Kass, at which she admitted the violations and apologized. Subsequent to that meeting, Ms. Kass told him she had not sought the required permits and zoning variance because of a prior meeting she had had with Mike Metcalf and Benny Puckett, another PPG official, who had indicated to her that no new trailer permits were being issued and no rezoning requests for trailer parks were being granted. Mr. Palazzo then met with Mr. Metcalf and Mr. Puckett and questioned them about what Ms. Kass had said. Both men denied that the meeting referenced by Ms. Kass had occurred; they also denied having given Ms. Kass the information she claimed to have received from them. Mr. Palazzo then requested that Mr. Metcalf and Mr. Puckett each give a written statement to that effect, which they did. Their written responses (Mr. Metcalfs email and Mr. Puckett’s letter) were introduced as evidence.
Mr. Palazzo testified extensively about the negative impact Ms. Kass’ actions had upon the operations and efficiency of his department. He testified that the improper utility hookups on Ms. Kass’ property posed a fire hazard. He further stated that he was telephoned and approached in person on numerous occasions by multiple trailer park owners, several of whom threatened to sue the PPG because it had allowed one of its own officials to violate the law while enforcing compliance from the general public. Mr. Palazzo also said that one of Ms. Kass’ neighbors, who had been cited for having an unpermitted trailer, told him Ms. Kass had informed her she did not need a permit. Describing the situation, Mr. Palazzo said: So that’s the problem I’m dealing with, I’m trying to put out a fire and my chief is throwing gasoline on it. Mr. Palazzo testified that, considering Ms. Kass’ position of leadership, extensive knowledge and years of j ^experience, he believed termination of her employment was the only appropriate option.
We find no manifest error in the Commission’s factual finding that Ms. Kass knowingly violated PPG ordinances. Further, the evidence supports the Commission’s decision that the discipline imposed upon Ms. Kass was based on legal cause and was commensurate with her infractions. Accordingly, that decision is neither arbitrary, capricious, nor an abuse of discretion. We therefore affirm the Commission’s decision.
AFFIRMED.