MAX N. TOBIAS, JR., Judge.
|!Jonathan Brown (“Brown”), a three and one-half-year officer with the New Orleans Police Department (“NOPD”), the appointing authority, having a rank of Police Officer I, appeals a part of the discipline imposed upon him by the City Civil Service Commission of New Orleans (“CSC”).[1] That discipline consists of an emergency suspension of six days, an additional suspension of five working days for lack of professionalism, ten working days for the improper use of alcohol while off-duty, and dismissal from the NOPD for lack of truthfulness and adherence to law, to-wit, a municipal battery (17271 MCS 54-96).[2] (Brown does not appeal his suspensions, only his termination from the NOPD.) For the reasons that follow, we affirm.
*1180 On 3 February 2007 at approximately 3:00 a.m., while on a three-day leave from duty, Brown and fellow officer, Sergeant James Young (“Young”), who were both off-duty and out of uniform, together with a civilian, Jeremiah LeVelle, went 12to the Frat House, a bar in the French Quarter of New Orleans. Brown was not armed, but was carrying a molded holster that one might mistake to be a handgun. An altercation and fight occurred between Brown, Young, LeVelle, and a patron of the bar, Shawn Shank (“Shank”). Brown was struck in the fight, sustaining facial injuries as a result of a pummeling by Shank. The bar’s bouncers restrained Shank and escorted him from the bar. Eventually, two Louisiana State Troopers arrested and handcuffed Shank. Officers Alfred Celes-tin and Derek Bilbo responded to a call from the bar. As Shank was being escorted from the scene in handcuffs for booking at the Eighth District police station located a short distance away in the French Quarter, Brown came upon Shank from behind and, reaching over Officer Bilbo, punched Shank in the back of the head. Brown alleges that the handcuffed Shank had lunged towards him, but no evidence in the record confirms Brown’s assertion. Brown followed Officers Celestin and Bilbo to the Eighth District police station (the reason therefor being unclear) and a boisterous shouting match between Brown and Shank, as well as various other officers ensued.
Eight hours later, Officer John Miller with the NOPD’s Public Integrity Bureau went to Brown’s residence, finding him intoxicated for he had been drinking alcoholic beverages. Evidence conflicts as to whether Brown was incoherent at that time, but shortly thereafter, Brown was tested and had a blood alcohol level of 0.223.
Brown assigns as error that (a) the NOPD and the CSC failed to find the NOPD s investigation of him pursuant to La. R.S. 40:2531 as flawed rendering the ^disciplinary proceeding null; (b) his punch of Shank in response to Shank’s movements following his arrest was not a battery in view of Shank’s earlier pummeling, which had given Brown a concussion; and (c) the penalty of termination from the NOPD for a single punch is excessive.
La. R.S. 40:2531 sets forth the standards for the investigation of police officer, to-wit:
A. The provisions of this Chapter shall only apply to those law enforcement officers employed by any municipality ... who are under investigation with a view to possible disciplinary action, demotion, or dismissal.
B. Whenever a law enforcement officer is under investigation, the following minimum standards shall apply:
(1) The law enforcement officer being investigated shall be informed, at the commencement of interrogation, of the nature of the investigation and the identity and authority of the person conducting such investigation, and at the commencement of any interrogation, such officer shall be informed as to the identity of all persons present during such interrogation. The law enforcement officer shall be allowed to make notes.
(2) Any interrogation of a law enforcement officer in connection with an investigation shall be for a reasonable period of time, and shall allow for reasonable periods for the rest and personal necessities of such law enforcement officer.
(3) All interrogations of any law enforcement officer in connection with the investigation shall be recorded in full. The law enforcement officer shall not be prohibited from obtaining a copy of the recording or transcript of the recording of his statements upon his written request.
*1181 (4) The law enforcement officer shall be entitled to the presence of his counsel or representative, or both, at the interrogation in connection with the investigation.
(5) No statement made by the officer during the course of an administrative investigation shall be admissible in a criminal proceeding.
14(6) The counsel called by the law enforcement officer under investigation may call witnesses to testify on his behalf.
(7) When a formal and written complaint is made against any law enforcement officer, the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the officer who is under investigation. The officer who is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. The investigation shall be considered complete upon notice to the law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint. Further, nothing in this Paragraph shall limit any investigation of alleged criminal activity.
C. There shall be no discipline, demotion, dismissal or adverse action of any sort taken against a law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal or adverse action of any sort whatsoever taken against a law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity.
Brown asserts that his questioning by the Public Integrity Bureau officer without representation, and while he was intoxicated, incoherent, and suffering | sfrom a concussion, renders the proceedings against him null in view of section 2581 B(2), citing U.S. v. Kreczmer, 636 F.2d 108, 110 (5th Cir.1981) (“A confession is involuntary if the defendant is so intoxicated by alcohol or other drugs that the confession is not rationally and freely given.”). Further, he asserts that his intoxication and concussion prevented him from exercising his right to have counsel or representation in violation of section 2531 B(4). Therefore, pursuant to section 2531 C, he claims that he cannot be disciplined.
Contrary to Brown’s assertion, Officer Miller, the officer who questioned Brown, stated that Brown was coherent. Although Officer Miller acknowledged that he believed Brown to be intoxicated, he stated that Brown’s statement was clear. Apparently, the then undiagnosed concussion was not affecting Brown’s ability to communicate. The record is devoid of any *1182 evidence that Brown requested counsel or the assistance of a representative when being questioned by Officer Miller.
We find that the hearing officer’s proceeding where live testimony was presented afforded Brown sufficient protection of his due process rights and those under La. R.S. 40:2531. Nothing that was disclosed to Officer Miller by Brown varies from that testified to in the hearing. Accordingly, any violation of Brown’s section 2531 rights was rendered moot by the hearing and any error is harmless. See Alcorn v. City of Baton Rouge ex rel. the Baton Rouge Police Dept., 02-0952, p. 7 (La.App. 1 Cir. 6/27/03), 851 So.2d 1194, 1203, vacated and remanded on other grounds, 03-2682 (La.1/16/04), 863 So.2d 517. Additionally, the CSC concluded that “[sjtrik-ing a handcuffed suspect in custody while [Brown] was intoxicated is sufficient for termination,” indicating that Brown’s statement given to Officer Miller regarding the incident was not a significant factor in affirming the | r,appointing authority’s termination of Brown. On the record before us, we do not find the CSC’s conclusion manifestly erroneous or clearly wrong.
We agree with Brown that the record fails to disclose that he was untruthful with the appointing authority. The issue of truthfulness relates to whether Brown was carrying a handgun in the bar (an alcoholic beverage outlet where the carrying of a weapon is prohibited). The State Troopers did not testify at the hearing before the hearing officer and those troopers’ statements are hearsay. Brown states that his molded holster had the appearance of a handgun and both his and Le-Velle’s testimony affirmatively establish that Brown left his handgun in his private automobile before entering the bar. No other evidence establishes that Brown had a handgun during the events of the evening. Thus, we find that portion of the CSC’s findings to be erroneous.
The question before the court is thus reduced to the single issue of whether the appointing authority exceeded its authority by terminating Brown for the battery consisting of a single blow to the handcuffed and arrested Shank.
Brown argues the handcuffed Shank lunged towards him in an aggressive manner and that he was acting in self defense when he struck Shank in the back of the head. The CSC, on the other hand, determined that Brown’s actions affected the efficient operation of the police department and that there was no justification or mitigating circumstances to relieve Brown of his responsibility for committing a battery on Shank.
The record discloses that Brown was intoxicated at the point in time that he struck Shank. Brown admits to having consumed three and one-half drinks before the altercation began. No evidence corroborates Brown’s assertion that Shank lunged at him while being escorted from the scene in handcuffs. Further, the 17verbal altercation that continued at the Eighth District police station in which Brown actively participated demonstrates that Brown’s anger and temper had not cooled over time. Moreover, from the totality of the facts, it is clear that Brown was sufficiently cognizant of his actions even though alcohol impaired and suffering from a concussion.[3]
As this court has said many times over, an employee who has gained permanent *1183 status in the classified civil service cannot be subjected to disciplinary action except for cause expressed in writing. La. Const. art. X, § 8; Walters v. Dept. of Police of the City of New Orleans, 454 So.2d 106 (La.1984). The employee may appeal his discipline to the CSC. The burden of proof as to the facts relating to the discipline is on the appointing authority. Goins v. Dept. of Police, 570 So.2d 93 (La.App. 4 Cir.1990). The CSC has a duty to decide independently from the facts presented to it whether the appointing authority has good and lawful cause for taking disciplinary action and, if so, whether the punishment imposed is appropriate for the infraction. Walters, supra. Legal cause exists whenever the employee’s conduct impairs the efficiency of the public service in which the employee is engaged. Cittadino v. Dept. of Police, 558 So.2d 1311 (La.App. 4 Cir.1990). The appointing authority has the burden to prove by a preponderance of the evidence the occurrence of the complained of activity and that the conduct complained of impaired the efficiency of the public service. Id. The appointing authority must additionally prove the actions complained of bear a real and ^substantial relationship to the efficient operation of the public service. Id. The facts need not be established beyond a reasonable doubt, but only clearly. Id.
In civil service disciplinary cases, an appellate court is presented with a multifaceted review function. First, as in other civil matters, deference will be given to the factual conclusion of the CSC. Hence, in deciding whether to affirm the CSC’s factual finding, a reviewing court should apply the clearly wrong or manifest error rule prescribed generally for appellate review. Whitaker v. New Orleans Police Dept., 03-0512, p. 3 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 574.
Second, in evaluating the CSC’s determination as to whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, a reviewing court should not reverse the CSC’s conclusion as to the existence or absence of cause for dismissal, unless the decision is arbitrary, capricious or characterized by an abuse of discretion. Id., citing Bannister v. Dept. of Streets, 95-0404 p. 8 (La.1/16/96), 666 So.2d 641, 647. “Arbitrary or capricious” means that there is no rational basis for the action taken by the CSC. Bannister, p. 8, 666 So.2d at 647.
We find that an intoxicated off-duty police officer clothed in civilian clothes impairs the efficiency of the operation of the NOPD when he strikes a handcuffed, arrested civilian being lead away by fellow officers. A police officer is trained to restrain himself from excessive measures against those suspected or accused of a crime; that the crime was committed against the police officer’s person is of no moment as is the fact that the police officer had sustained a concussion in the crime 18committed by the accused when no evidence discloses how that concussion affected that the injured person’s judgment.
A police officer is technically never “off-duty.”[4] Even when off-duty, a NOPD *1184 officer can carry a concealed weapon and has the authority to arrest those committing crimes in his or her presence. The appointing authority has a right to expect and require that all officers it employs will behave in a manner consistent with their sworn duty. Marks v. New Orleans Police Dept., 06-0575, p. 5 (La.11/29/06), 943 So.2d 1028, 1033. As we have said:
The public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Newman ... [v. Department of Fire, 425 So.2d 753 (La.1983)]. Indeed, the [Civil Service] Commission should give heightened regard to the appointing authorities that serve as special guardians of the public’s safety and operate as quasi-military institutions where strict discipline is imperative.
Stevens v. Dept. of Police, 00-1682, p. 8 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, 627.
In the case at bar, Brown’s actions and behavior on 3 February 2007 demonstrate that Brown can be a hot-headed individual unable to control his actions and temper who might in the future, when confronted with a similar incident, resort to violent behavior in which someone might be seriously injured | inwithout justification. The appointing authority was well within its discretion to terminate Brown’s service with the NOPD.
For the foregoing reasons, we affirm the decision of the CSC.
AFFIRMED.

. The appellee, the appointing authority, filed no brief in this matter.

. 17271 MCS 54-96, relating to battery, states:
(a) It shall be unlawful for any person to commit the crime of battery.
(b) Battery is the intentional use of force or violence upon the person of another; or the intentional administration of a poison or other noxious liquid or substance to another.

. The record on appeal is devoid of evidence of the extent and severity of Brown's concussion and how it may have impaired him in any way. The sole record evidence is a one-page “sign-out sheet" from the LSU Health Sciences Center at the University Hospital Emergency Department, indicating a "Fast Track” assessment of Brown’s injury as a concussion; the single page discloses *1183 Brown's discharge from the facility at 7:00 p.m. on 3 February 2007, with the physician prescribing one Lortab every four to six hours and two to three Motrin every six to eight hours for pain. In the absence of more evidence, we cannot say that the concussion significantly affected or impaired Brown at all.

. See Shepack v. New Orleans Police Dept., 00-1345, p. 2 (La.App. 4 Cir. 5/16/01), 791 So.2d 733, 734-735 citing Rule 4, Sec. 8 of the Police Officer’s Manual, which provides:
[T]he fact that members may be technically OFF-DUTY shall not relieve them from the responsibility of taking the required police *1184 action on any serious matter coming to their attention at any time.