DANIEL MCMULLEN        *       NO. 2022-CA-0589

VERSUS                *

                         COURT OF APPEAL

NEW ORLEANS POLICE    *

DEPARTMENT             FOURTH CIRCUIT

                      *

                         STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
CITY CIVIL SERVICE COMMISSION ORLEANS
NO. 9344

* * * * * *
**Judge Paula A. Brown**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Sandra Cabrina Jenkins, Judge Paula A. Brown)

Eric J. Hessler
ATTORNEY AT LAW
320 N. Carrollton Avenue
Suite 202
New Orleans, LA 70119

       COUNSEL FOR PLAINTIFF/APPELLANT

Elizabeth S. Robins
DEPUTY CITY ATTORNEY
Corwin St. Raymond
CHIEF DEPUTY CITY ATTORNEY
Donesia D. Turner
CITY ATTORNEY
CITY OF NEW ORLEANS
1300 Perdido Street, Room 5E03
New Orleans, LA 70112

       COUNSEL FOR DEFENDANT/APPELLEE

                                **FEBRUARY 1, 2023**

                                       **AFFIRMED**

This is a civil service case. Appellant, Sergeant Daniel McMullen ("Sgt. McMullen"), an officer with permanent status, appeals the May 26, 2022 decision of the Civil Service Commission of the City of New Orleans (the "Commission") that affirmed the discipline—termination—imposed by the New Orleans Police Department ("NOPD") and found that the discipline was commensurate with the offense. For the following reasons, we affirm.

## PROCEDURAL AND FACTUAL HISTORY

The facts leading to Sgt. McMullen's discipline arise out of a motor vehicle collision. On November 15, 2020, Sgt. McMullen worked his normal shift at the Eighth District and afterwards he worked a paid detail in uniform for the Downtown Development District. After his paid detail, Sgt. McMullen returned to the Eight District to complete paperwork. Around midnight, he went to a friend's restaurant where, according to his own testimony, he consumed a "couple of shots" of whiskey. He left the restaurant in his take-home police vehicle and was involved in a two-car motor vehicle accident, which caused his vehicle to flip onto its top, caused significant property damage to both vehicles and caused bodily injury to himself and the driver of the other vehicle.

1

Sgt. McMullen was transported to University Medical Center ("UMC") for treatment of his injuries. In accordance with NOPD protocols, Sgt. McMullen was administered an initial breathalyzer test at 4:49 a.m. and a confirmation breathalyzer test at 5:08 a.m. The first test registered a blood alcohol concentration of 0.093, and the confirmation test registered a blood alcohol concentration of 0.141. Sgt. Julie Jacobs of NOPD's Public Integrity Bureau ("PIB") was assigned to investigate Sgt. McMullen's motor vehicle accident. After the PIB investigation, five charges were instituted against Sgt. McMullen: (1) operating a vehicle while intoxicated, (2) careless operation of a vehicle, (3) use of alcohol/drugs off-duty, (4) violation of take-home vehicle policy and (5) violation of uniform specifications.[1] On January 14, 2021, Sgt. McMullen was issued a Notice to the Accused of Completed Investigation and Notice of Pre-Disciplinary Hearing. Sgt. Jacobs recommended that he be disciplined for all but one of the five charges—violation of take-home vehicle policy.

NOPD conducted a Superintendent's Committee Disciplinary Hearing on August 26, 2021. The Committee suspended the hearing and resumed on November 18, 2021, at which time NOPD issued a recommendation that sustained all of the charges recommended by Sgt. Jacobs, with operating a vehicle while intoxicated, carrying the discipline of termination. On the same day, NOPD issued

---

[1] Specifically, Sgt. McMullen was charged with the following violations:

1. Rule 2, Moral Conduct, Paragraph 1, Adherence to Law, to wit 17271 MCS 154-382, relative to operating a vehicle while intoxicated;
2. Rule 2, Moral Conduct, Paragraph 1, Adherence to Law, to wit La. R.S. 32:58, relative to careless operation of a vehicle;
3. Department Rule 3, Professional Conduct, Paragraph 9, use of alcohol/drugs off-duty;
4. Rule 4, Performance of duty, Paragraph 2, to wit, NOPD Chapter 17.2.2(8) take home vehicle; and
5. Rule 4, Performance of Duty, Paragraph 2, to wit NOPD Chapter 41.10(14), uniform specifications.

a letter of termination to Sgt. McMullen, specifically referencing his violation of Rule 2, Moral Conduct, Paragraph 1, Adherence to Law, to wit La. R.S. 32:58, relative to Operating a Vehicle While Intoxicated, which provides as follows:

> (a) The crime of operating a vehicle while intoxicated is the operation of any motor vehicle, aircraft, watercraft, vessel, or other means of motorized conveyance when:
>
> > (1) The operator is under the influence of alcoholic beverages; or
> > (2) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per 100 cubic centimeters of blood. [2]

Sgt. McMullen promptly appealed his termination to the Commission, and a hearing was held on February 2, 2022.

NOPD called four witnesses at the hearing: Sgt. McMullen, Sgt. Jacobs, Jeff Mendler ("Mr. Mendler") and Chief Deputy Superintendent of the New Orleans Police Department Christopher Goodly ("Chief Goodly").[3] Sgt. McMullen testified on his own behalf, and the parties stipulated that there was no issue regarding the timeliness of the investigation into the accident. Evidence introduced into the record included a photograph taken after the accident that showed Sgt. McMullen's take-home vehicle flipped over onto its roof, a photograph of the other vehicle damaged in the accident, screening results from Sgt. McMullen's breathalyzer test and documentation of the investigation and resulting discipline.

At the conclusion of the hearing, the hearing examiner returned a report, finding that NOPD had proper cause for disciplining Sgt. McMullen but that the

---

[2] Sgt. McMullen was also suspended for the careless operation of a vehicle, the use of alcohol/drugs off-duty and uniform specifications. However, Sgt. McMullen did not appeal these disciplinary decisions to the Commission and they are not the subject of the instant appeal.

[3] At the time of Sgt. McMullen's August 26, 2021 and November 18, 2021 pre-disciplinary hearings, Chief Goodly was the Deputy Superintendent of Management Services.

discipline was not commensurate with the offense. The hearing examiner further recommended that Sgt. McMullen's appeal be affirmed, in part, and reversed, in part, and that the Commission should order NOPD to reinstate Sgt. McMullen with all back pay and emoluments of employment less an aggravated penalty of one-hundred and twenty (120) days suspension already served.

On May 26, 2022, the Commission denied Sgt. McMullen's appeal and determined that NOPD met its burden in proving that the offense occurred, that the offense impaired the department's efficient operation, and that the discipline was commensurate with the offense. This timely appeal followed.

## STANDARD OF REVIEW

"An employee with permanent status in the classified city service may only be terminated, or otherwise subjected to disciplinary action, in writing and for good cause." *Stephens v. New Orleans Police Dep't*, 19-0641, p. 6 (La. App. 4 Cir. 12/4/19), 286 So.3d 519, 523 (citing *Laviolette v. Dep't of Police*, 16-0095, p. 5 (La. App. 4 Cir. 8/24/16), 200 So.3d 962, 966); *See also* La. Const. art. X, § 8(A). "This Court has determined that 'good cause' includes conduct by the employee which is detrimental to the efficient operation of the department or prejudicial to the public service." *Id.* "The burden of proof on appeal to the Civil Service Commission is on [NOPD]." *Id.* (citing *Waguespack v. Dep't of Police*, 2012-1691, p. 3 (La. App. 4 Cir. 6/26/13), 119 So.3d 976, 977). "Thus, [] NOPD must prove, by a preponderance of the evidence, that the complained of activity and conduct impaired the efficiency of public service." *Id.* (citing *Johnson v. Dep't of Police*, 575 So.2d 440, 444 (La. App. 4 Cir. 1991)).

"On appeal, this Court reviews the Commission's factual findings under a clearly wrong or manifest error standard of review." *Durning v. New Orleans*

4

*Police Dep't*, 19-0987, p. 4 (La. App. 4 Cir. 3/25/20), 294 So.3d 536, 538-39 (citing *Charles v. New Orleans Police Dep't*, 19-0115, p. 2 (La. App. 4 Cir. 6/19/19), 274 So.3d 914, 916). "When evaluating the Commission's finding that a disciplinary action was based on a legal cause and commensurate with the infraction, the Commission's determination will only be disturbed if it was 'arbitrary, capricious, or characterized by abuse of discretion.'" *Id*. "Thus, for the Commission's decision to be arbitrary or capricious there must be no rational basis for the action taken." *Id*. Furthermore, the Commission "has the duty and authority to affirm, reverse, or modify the action taken by [NOPD]." *Honore' v. Dep't of Pub. Works*, 14-0986, 9 (La. App. 4 Cir. 10/29/15), 178 So.3d 1120, 1127.

## DISCUSSION

Sgt. McMullen presents two assignments of error for review on appeal. First, he argues that the Commission erred in finding that the evidence was sufficient to establish that he was operating a vehicle while his blood alcohol level was at or above 0.08% on two grounds: (1) there were no signs of physical impairment and (2) the breathalyzer test results were inaccurate. Second, he contends that the punishment of termination was not commensurate with the offense. We will discuss each assignment of error in turn.

*Sufficiency of the Evidence*

Sgt. McMullen argues that for NOPD to prevail on the charge of driving while intoxicated, which it filed against him, NOPD would have to prove the level impairment, which is routinely shown by way of field sobriety tests, observation of physical impairment, scientific testing, or a combination thereof. Sgt. McMullen contends that Sgt. Jacobs testified that she did not perform a field sobriety test; she did not personally observe any signs of physical impairment; she never smelled

5

any alcohol on his breath; and no witnesses to the accident reported any such observations to her. Thus, he argues that because no field sobriety tests were administered nor were there any physical signs of intoxication documented in the investigation reports, NOPD failed to prove his level of impairment, if any. Sgt. McMullen further points to the two breathalyzer tests administered to him, wherein the results showed his blood alcohol level rising hours after the incident. Sgt. McMullen urges that based on the discrepancies in the test results, the breathalyzer results are unreliable. In sum, Sgt. McMullen maintains that the evidence, taken as a whole, was insufficient to find that he was operating his vehicle while intoxicated.

At the hearing, Sgt. Jacobs confirmed that neither she nor any witnesses to the accident witnessed any signs of physical impairment, but that she heavily relied on the breathalyzer test results to reach her conclusion that Sgt. McMullen was driving his police take-home vehicle while intoxicated. In contrast, Mr. Mendler—owner of the Toxicology and Drug Analysis Laboratory who administered Sgt. McMullen's breathalyzer test—testified that he personally observed Sgt. McMullen slurring his words and smelled alcohol on his breath during the test.

In response to Sgt. McMullen allegations regarding the breathalyzer tests, Mr. Mendler affirmed that two blood alcohol tests were administered—the second blood alcohol level being higher than the first. Mr. Mendler testified that a confirmation breathalyzer test can produce a different reading than the initial test if the test subject did not give sufficient breath for the machine to analyze. Mr. Mendler stated that he believed insufficient breath during Sgt. McMullen's initial test was the cause for the lower reading. He relayed, to his belief, that because Sgt. McMullen was resistant and did not give a deep, sufficient breath for the

6

breathalyzer to automatically capture the results for the first test, he had to manually capture the result. Mr. Mendler explained that the manual capture as opposed to the automatic capture may produce different results because manually capturing the results artificially dilutes the air which then produces a lower number. He further testified that if the breathalyzer was malfunctioning, it would not give a value at all. Mr. Mendler continued that his company calibrates the breathalyzer on a monthly basis and following each positive test to confirm that the instrument worked properly. Mr. Mendler testified that after administering Sgt. McMullen's tests, he calibrated the machine and the results were normal. A review of the record reveals the alcohol testing form signed by Mr. Mendler listed that the initial screening results at 4:49 a.m. were 0.093, the confirmation results at 5:08 a.m. were 0.141 and the calibration check at 5:31 a.m. was successful.

Sgt. McMullen testified that although he drove his department vehicle after taking a "couple of shots" of whiskey, he was not intoxicated. Sgt. McMullen further stated that he believed he was looking at his phone at the time of the accident, but he could not recall exactly how the accident occurred.

Based on the evidence and the testimony of the witnesses, the Commission found that NOPD carried its burden in proving that Sgt. McMullen drove his take-home police vehicle while under the influence of alcohol. "This Court has previously held that 'deference will be given to the factual conclusions of the Commission.'" *Gant v. New Orleans Police Dep't*, 19-0640, p. 13 (La. App. 4 Cir. 12/4/19), 286 So.3d 524, 533 (quoting *Pope v. New Orleans Police Dep't*, 04-1888, p. 6 (La. App. 4 Cir. 4/20/05), 903 So.2d 1, 4). After review of the record, we find the Commission's factual conclusion to be reasonable. Consequently, we

find evidence was sufficient to find that Sgt. McMullen was operating his police take-home vehicle while intoxicated.

*Discipline Commensurate with Offense*

Sgt. McMullen argues the Commission erred in finding the discipline of termination was commensurate with his offense. In support, Sgt. McMullen notes his 30 years of experience with NOPD and lack of prior disciplinary history as mitigating factors. Sgt. McMullen also points to the presumed penalty of 80-day suspension for operating a vehicle while intoxicated under NOPD's disciplinary matrix and the Hearing Examiner's recommendation of a 120-day suspension as evidence of why the discipline is not commensurate with the offense.

NOPD argues that it did consider Sgt. McMullen's 30 years of service as a mitigating factor, but that the record evidence shows that the aggravating factors greatly outweigh the mitigating factor. Specifically, NOPD points to the extensive property damage of both vehicles and bodily injuries to both Sgt. McMullen and the other driver as the factors that aggravated the discipline.

Rule IX, § 1.1 of the Rules of the Civil Service Commission for the City of New Orleans "provides that when a classified employee 'has committed any act to the prejudice of the service, or has omitted to perform any act it was his/her duty to perform, or otherwise has been subjected to corrective action, the appointing authority shall take action as warranted by the circumstances to maintain the standards of effective service.'" *Bell v. Dep't of Police*, 16-0677, p. 8 (La. App. 4 Cir. 3/22/17), 216 So.3d 819, 824. "This action may include: (1) removal from the service; (2) involuntary retirement; (3) reduction in pay within the salary range for the employee's classification, subject to the provisions of Rule IV, Section 8; (4) demotion to any position of a lower classification that the employee is deemed by

8

the appointing authority and the Director to be competent to fill, accompanied by a reduction in pay . . .; (5) suspension without pay not exceeding one hundred twenty (120) calendar days; and (6) fine." *Id*.

This Court has consistently upheld the termination of police officers for the use of alcohol plus aggravating factors. For example, the *Bell* Court upheld the officer's termination because after drinking, she crashed her personal car into another car and left the scene of the incident. Although it was the officer's first offense, this Court found that not only had the officer consumed alcoholic beverages, but she also became intoxicated, seriously damaged her own car and that of another.

In *Michel v. Dep't of Police*, 16-0623 (La. App. 4 Cir. 2/15/17), 212 So.3d 627, this Court affirmed the officer's termination and found that the discipline was commensurate with the offense where the officer testified that, with a blood alcohol level of 0.208, he knowingly carried his service weapon into a bar. Lastly, in *Brown v. Dep't of Police*, 08-0466 (La. App. 4 Cir. 12/3/08), 999 So.2d 1178, this Court upheld the officer's termination for striking a handcuffed individual on the back of the head while intoxicated. This Court noted that the officer admitted to having consumed three and a half alcoholic beverages prior to the altercation.

In contrast, this Court, in *Cunningham v. New Orleans Police Dep't*, 18-0095, p. 10 (La. App. 4 Cir. 10/10/18), 257 So.3d 801, 807, reversed the decision of the Commission to affirm NOPD's termination of an officer when "nowhere in the record before this Court ha[d] it been identified that [the officer] ever operated a motor vehicle under the influence of alcohol or drugs." In a concurring opinion, Judge Atkins elaborated: "[w]here there is a single instance of [c]onsumption of [a]lcohol while [o]ff-duty with no additional charges proven, the discipline

9

imposed is not commensurate with the infraction, and termination was arbitrary and capricious." *Id*. at p. 10, 257 So.3d 801, 808.

In the case *sub judice*, the Commission credited Chief Goodly's testimony that NOPD aggravated the penalty because Sgt. McMullen's conduct resulted in a motor vehicle accident with injuries. Not only did Sgt. McMullen flip his take-home police vehicle, which caused substantial damage to the vehicle and the second vehicle in the accident, he also caused bodily harm to the civilian second driver and himself. Moreover, the accident attracted much media attention, which inhibited the public's ability to trust NOPD. In fact, Sgt. McMullen understood the gravity of the accident because he testified that he was embarrassed about the incident and the media scrutiny it caused. "It is well settled that this Court should not modify the discipline imposed by the Commission unless it is 'arbitrary, capricious, or characterized by an abuse of discretion.'" *Gant*, 19-0640, p. 14, 286 So.3d at 533 (quoting *Rivet v. Dep't of Police*, 18-0229, p. 10 (La. App. 4 Cir. 10/24/18) 258 So.3d 111, 120). As the *Gant* Court explained, "[g]reat deference should be afforded to the Commission's ruling upholding the disciplinary decision of the NOPD [because] 'neither the [Commission] nor the reviewing court may serve as a *de facto* pardon board.'" *Id*. Thus, based on the foregoing, we conclude the Commission did not err in finding that NOPD's discipline of Sgt. McMullen was commensurate with the offense.

## CONCLUSION

For the aforementioned reasons, we find that the Commission did not abuse its discretion, nor was its decision to uphold the NOPD's termination of Sgt. McMullen arbitrary and capricious. Accordingly, we affirm.

**AFFIRMED**

10